631 A.2d 1323

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Israel SANTIAGO.**

Superior Court of Pennsylvania.

Argued May 11, 1993.

Filed Aug. 27, 1993.

Reargument Denied Oct. 26, 1993.

136

Joan Weiner, Asst. Dist. Atty., Philadelphia, for the Com., appellant.

Helen A. Marino, Philadelphia, for appellee.

Before BECK, POPOVICH and HESTER, JJ.

HESTER, Judge:

The Commonwealth appeals from the October 21, 1992 order entered by the Philadelphia County Court of Common Pleas dismissing all charges against appellee following argument on post-verdict motions which were filed after appellee was found guilty at a nonjury trial.[1] At issue is whether the

---

1. The Commonwealth's notice of appeal states that it appeals from "the order of the Honorable Albert J. Snite, Jr., discharging defendant, entered in this matter on the 21st day of October 1992." Appellee argues that the Commonwealth has appealed only the propriety of the dismissal order which it maintains was entered on April 24, 1992. Appellee's brief at 3, 14. He asserts that the Commonwealth, therefore, has waived the issue regarding the propriety of the hearing court's grant of a new trial.

Our review of the record reveals that there was no order entered on April 24, 1992, which dismisses all charges against appellee. Appellee's guilty verdict was entered on that date. There is, however, only *one* order dated October 21, 1992. That order granted the defendant's motion for a new trial *and* simultaneously dismissed all charges against the defendant due to the Commonwealth's refusal to disclose. The Commonwealth has appealed from that order.

Commonwealth is required to reveal a surveillance address where such disclosure could jeopardize the safety of innocent persons at the location, and where sufficient details concerning the location had been disclosed so that defendant was able to adequately cross-examine the police witnesses about their ability to observe the criminal activity. We hold that such disclosure was unnecessary under the circumstances. We reverse, reinstate the verdict, and remand for sentencing.

On September 26, 1989, narcotics officers Michael Eibel and Thomas Martinka conducted an undercover surveillance of the 1800 block of Wallace Street in Philadelphia. That area of the city was notorious for its high drug trafficking. With the use of binoculars, the officers monitored the street activity from a confidential location in a building on the east side of 19th Street. The officers observed appellee standing on the south side of Wallace Street. They watched as appellee and a group of approximately twenty people moved west from the middle of Wallace Street toward the corner on 19th Street. At appellee's direction, the group separated from him and formed a single line. The first three individuals in the line each walked up to appellee, handed him money, and in return, received a small, plastic packet. The officers noticed that appellee retrieved the plastic packets from a brown paper bag which he held in his hand.

The officers notified their field team but remained in their surveillance location and continued to monitor appellee. Officer Eibel saw appellee complete one more transaction, cross over to the north side of Wallace Street, and place the brown paper bag on the ground, behind a refrigerator which was situated on a vacant lot. Appellee then walked east on Wallace Street toward 18th Street. Officer Eibel guided the field team to appellee who was arrested before he reached 18th Street. The field team searched appellee and found forty dollars in cash. In addition, the team found the brown paper bag which was exactly where Officer Eibel observed appellee place it. The bag contained seventy-three clear plastic pack-

ets of cocaine sealed with red tape which weighed 27.2 grams and had a street value of $2,720.00.[2]

In his defense, appellee maintained that he was the victim of misidentification. He denied that he was the individual whom the surveillance officers had watched selling cocaine. Instead, he claimed that he was in the area to purchase special water for his wife's asthma machine. He explained that the money taken from him was payment for a landscaping job.

At trial, the defense attempted to ascertain the exact address of the surveillance location through cross-examination of the surveillance team. Appellee maintained that the information was essential to his ability to defend himself. The Commonwealth argued that divulging the exact address of the location would compromise the safety of individuals residing at that address. Furthermore, it argued that disclosure would jeopardize future surveillance from the location.

The Commonwealth invited the court to *voir dire* Officer Eibel in order to record the legitimate reasons for maintaining confidentiality. During questioning, the officer explained that the location had been used in the past for similar operations, and while he no longer worked the area and could not say with certainty that it was currently being used in an ongoing basis, disclosure of the site could result in future reprisals against the residents. He feared that disclosure of the precise location would compromise the safety of the individuals at the address.

Numerous details regarding the location were provided to the defense. Officer Eibel testified that he conducted the surveillance from a building; that he was approximately twenty-five feet above the sidewalk; at times he was looking through one pane of glass, and at other times, he was looking through no glass; that the surveillance was located on the 600

---

2. The brown paper bag contained three larger, clear plastic baggies containing a white powder which tested positive for cocaine. Two of the larger bags were closed and each contained twenty-five smaller "dime bags" ($10.00 street value), which were individually sealed with red tape. The third plastic baggie was open and contained twenty-three "dime bags" which were sealed with red tape.

block of north 19th Street, approximately one hundred feet from the southeast corner of 19th and Wallace Streets. The Commonwealth successfully advanced its position concerning the confidentiality of the precise address, however. The court allowed the defense to pinpoint the general location, but did not allow it to pursue questioning aimed at obtaining the street number. It concluded that the stipulations placed upon the questioning did not represent a serious impairment in appellee's ability to question the officers regarding the location of obstacles which may have interfered with the officer's observations of the illegal activity. Based on the testimony and evidence offered at trial, the court found appellee guilty of possession of a controlled substance with intent to deliver.

Post-verdict motions were filed and subsequently argued before the trial court. At the July 6, 1992 hearing, appellee argued that his constitutional right to confront and cross-examine Officer Eibel was violated because the trial court curtailed his questioning regarding the exact address of the surveillance site. He maintained that his ability to defend himself was hampered by the limitations imposed by the trial court. Because no case law directly on point had been presented by either party, appellee requested a continuance. The court set another hearing date for August 28, 1992.

At the hearing, the court acknowledged its confusion with regard to the similarities and differences of the confidentiality interests of informants as opposed to locations. The court reasoned that if, in fact, the two were analogous, it would be compelled to grant the post-verdict motion. The court queried whether in one sense the situations were similar in that all of the testimony regarding the observation of appellee originated from the undisclosed location. The court reasoned, therefore, this was not unlike a situation wherein all of the evidence in a case is derived from information obtained from a confidential informant, and no other disinterested party, i.e., a law enforcement officer, was available to testify against the defendant. The court concluded that current case law would require the disclosure of a confidential informant in such a

circumstance, and stated that it likely would grant appellee's post-verdict motion.

The Commonwealth argued that the situations were dissimilar in that in the case of the informant, the testimony of the individual was necessary to substantiate the facts of the case. In the instant case, however, there was no need to identify the precise locale in order to corroborate the officer's testimony. The officer is the eyewitness, not the location. Nonetheless, the court failed to reach a resolution. Instead, it requested additional information from both parties. The court requested the parties to prepare a letter explaining their position on whether further testimony should be taken regarding the appropriateness of keeping the location confidential. The court, which was concerned and somewhat unsettled with the fact that neither party raised the issue in a pre-trial motion, was confused about the status of the law in in Pennsylvania on the privilege of the confidential location. It queried that perhaps there should be some test or requirement that the Commonwealth show the court, in camera, a photograph of the area so that the court could make a preliminary determination whether there are or are not obstructions. *See* Reproduced Record ("R.R"), at 230a–235a. The Commonwealth responded that the case had been tried and that the production of further information post-trial was improper because post-verdict motions are to be decided on the basis of law, not fact.

At the hearing held on October 14, 1992, the Commonwealth refused to provide the defense with any additional information regarding the surveillance location. The Commonwealth did recite the trial testimony, which the court credited. It argued that even if there were law on point as of the hearing date, the post-verdict research would be inapplicable to the instant case, and therefore, unnecessary. However, the court chose to continue the case, once again to consider the applicable case law and consider whether it had committed error by limiting the scope of the officer's testimony.

On October 21, 1992, the court fashioned a test which it retroactively applied to the trial facts. It concluded that while it is likely that there is a privilege to keep a location confiden-

tial, nonetheless, it would be limited by an accused's right to a fair defense. Factors to be considered would include the accused's right to question observations made and the possible significance of the information. The court concluded that since all of the observations which led to the arrest of the accused were made from the confidential location, that information should have been divulged. The court then granted appellee a new trial based on the perceived trial court error. It once again asked the Commonwealth if it would be willing to release the confidential information. When the Commonwealth responded that it would not, the court dismissed all charges against appellee. This appeal followed.

■ On appeal, the Commonwealth argues that it was not constitutionally compelled to divulge the exact address from which Officer Eibel monitored appellee's illegal activity because the record contains a multitude of information available to appellee via direct and cross-examination. Specifically, the record reveals that Officer Eibel told the court that his surveillance position was approximately one hundred and twenty-five feet from the southeast corner of 19th and Wallace streets, on the six hundred block; he was approximately twenty-five feet above sidewalk level; ample overhead lighting was provided by a nearby baseball field; his sight was enhanced through the use of binoculars; while a cyclone fence bordered the field on the sidewalk, it did not occlude his view since he was able to see through it. R.R., at 102a, 101a, 81a.[3]

■ Furthermore, the Commonwealth maintains that the defendant's desire to ascertain the exact address was outweighed by the need for confidentiality. Officer Eibel told the court that confidentiality was necessary since the location had been used by the police on several different occasions, the individuals who had assisted the police were still at the address, and disclosure of the location might compromise their safety. Indeed, when all testimony regarding the surveillance location had been offered, the trial court originally concluded

3. Since we agree that this provided sufficient information upon which to fashion effective cross-examination, the confrontation clause of the United States Constitution was not violated.

that the limitation placed upon the defense did not amount to "that serious of an impairment upon the ability to cross-examine." R.R. at 103a. We agree with the court's first impression.

■ Pa.R.Cr.P. 305 provides that the defendant's right to discover may be limited if the information sought is protected by privilege. Our courts long have recognized the exercise of the governmental privilege with regard to the disclosure of the identity of informants. The notion that the informant is a virtually indispensable adjunct to the enforcement of narcotics laws is hardly new. *See Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967). In *Carter*, our Supreme Court held that the trial court must balance the competing interests regarding the flow of information and an accused's right to prepare a fair and adequate defense. Specifically, the court held that if the informer was a material witness to the alleged illegal act, and no other disinterested sources, i.e., non-law enforcement personnel, were capable of corroborating the Commonwealth's case against the accused, then disclosure would be warranted. It is the defendant, however, who has the burden of demonstrating to the trial court that the information sought is material and that disclosure is in the interest of justice. *Commonwealth v. Novasak*, 414 Pa.Super. 21, 606 A.2d 477 (1992).

Appellee vaguely maintains that the exact address was critical to his defense of misidentification. He argues that it was imperative in order to refute the officers' testimony. Yet, the record shows that the court afforded the defense with the opportunity to question the officers regarding any potential visual obstacles and allowed the defense to pinpoint the location to a specific area on a specific block. However, the defense made no attempt to show that specific buildings within that locale did not have an unobstructed view of the street below, thus necessitating a more detailed cross-examination. Instead, appellee attempts to bolster his position with a claim that the Commonwealth is at fault for failing to support its unsubstantiated claim that the exact location should remain confidential.

While our courts have yet to recognize a specific privilege with regard to the confidentiality of surveillance locations, the competing interests with regard to a balancing test utilized in determining whether the information is material to a fair defense as opposed to the governmental interest in protecting the location used for the purpose of sheltering inhabitants from reprisal, are analogous. Just as drug informants are tools for law enforcement personnel, so are ordinary citizens who put their faith in the protection offered by law enforcement personnel when they offer their homes or businesses for surveillance purposes. It is no secret that our society is plagued with crimes which arise directly or indirectly from illegal drug activity. Likewise, we are not surprised when network news anchors inform us that individuals are afraid to come forward with information or become involved in police investigations because they fear that either they or their families will be harmed as a result of their cooperation. Certainly, the situation is critical. The need to balance the accused's right to a fair and adequate defense as against the government's need to ensure the safety of private citizens weighs heavily.

Therefore, we must closely scrutinize appellee's request for information. While appellee insists that the information was necessary in order to support his defense of misidentification, he does not tell us why. He was given the opportunity to question the officers about the location *ad nauseum*. The officers testified as to the location of the surveillance point, the distance between the observation site and the defendant, the angle of view, the direction—every question that was asked was answered, save for the exact address. Appellee had every opportunity to ascertain whether the view was unobstructed. Our review of the testimony reveals that while appellee was precluded from questioning the officers concerning the street number, there were no substantial limitations placed upon his ability to discredit the officers' observations. At no time, however, did the defense attempt to challenge or establish that the view from different positions within the pinpointed

range of the locale described by the officers would have varied from clear to obstructed depending on a precise address.

The defense attempts a comparison between *United States v. Foster*, 986 F.2d 541 (D.C.Cir.1993), and the facts herein. Our review of that case reveals that in *Foster*, only the angle and the distance of the post from the location where the defendant was monitored were revealed during cross-examination. In addition, there was a heightened concern as to the ability of the officers to observe Foster's alleged activity because initially, the field officers arrested another man based on the description given by the officer at the observation post. That man was released, and then Foster was arrested. Furthermore, the District of Columbia Court was guided by precedent which required the trial court to balance the interests of the government in protecting the location of the post as against the defendant's right to question the accuracy of the officer's perceptions. *See United States v. Harley*, 682 F.2d 1018 (D.C.Cir.1982).

In *Foster*, there were no concerns about protecting *people* at the location, nor were there any concerns that the location would be used again, as was the case herein. In *Foster*, the Commonwealth sought to exercise their privilege based on the argument that disclosure would destroy the effectiveness of the observation post. Since the officer was monitoring drug deals from an open area, the court concluded that no citizens had aided the police. Furthermore, the court added that after Foster's trial, any dealer would be a complete fool to conduct a transaction within range from the observation area. Therefore, the court concluded that when the officer testifying is essential to the case against the defendant, and there are no realistic competing interests, the information should be revealed.

*Foster* is distinguishable in that herein, not only was a great deal more information revealed to the defendant through cross-examination, but there are important competing societal interests. In order to defeat those interests and the privilege which protects them, the defendant must make a

specific showing that the information available to him is insufficient to mount an effective defense. Appellee made no attempt to prove that areas within that finite location were obstructed from view.

Since appellee has not met his burden, we conclude that the Commonwealth may assert its governmental privilege regarding the confidentiality of the surveillance location. Accordingly, we hold that the post-trial court erred in granting a new trial based upon the reconsideration of its decision at trial protecting the confidentiality of the surveillance location.

Order reversed, verdict reinstated, and the case is remanded for sentencing. Jurisdiction relinquished.