## Alexandria
## GEORGE DONALD HOLLINS
### v.
## COMMONWEALTH OF VIRGINIA
No. 0236-93-4
Decided November 15, 1994

COUNSEL

Richard C. Goemann, Senior Assistant Public Defender, for appellant.

Eugene Murphy, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

FITZPATRICK, J.—George Hollins (appellant) was convicted in a bench trial of cocaine distribution and sentenced to twelve years in the penitentiary. On appeal, he contends the trial court erred in failing to require disclosure of the exact location of a police observation post and in finding the evidence sufficient to sustain his conviction. Finding no error, we affirm.

## BACKGROUND

On September 11, 1992, Officer William Bunney (Bunney) of the Alexandria Police Department conducted a narcotics surveillance with binoculars from an elevated observation post on Queen Street. Around 11:00 p.m., Bunney saw appellant place a rock-like object into the hand of a woman who was subsequently detained and found to be in possession of two rocks of crack cocaine. When two police officers approached appellant, he fled but was quickly apprehended. The officers confiscated $160 from him.

After his arrest, appellant admitted that "he had just passed the rock from one person to another." In response to further questions, appellant indicated that he passed the cocaine "for the money."

The evidence established that Bunney agreed with the apartment owner to keep the surveillance location secret, because the owner feared reprisals from people in the neighborhood involved in the drug trade. Bunney testified that the observation post was approximately sixty feet from appellant's location, that the post was elevated at a height of twenty-five to thirty feet, and that the post was within the 1100 block of Queen Street. Bunney also explained that he used a pair of twenty by eighty binoculars, that the area was well lit by the lights of businesses within the block, that no weather conditions interfered with his observation of ap-

pellant, and that no obstructions blocked his view. On cross-examination, Bunney testified as to the exact angle of his view:

Mr. Hollins would have been standing in the middle of the 1100 block of the south side of the street facing north. I was on the north side of that street watching him, and my angle at watching him would have been southwest.

Bunney did not disclose the exact location of the post.

## DISCLOSURE OF OBSERVATION POST

Before trial, as a part of a request for exculpatory evidence, appellant moved that the Commonwealth be required to reveal the exact location of the police observation post. Appellant argued only that it "is material to the defense of this case."

Disclosure of a police observation post is a matter of first impression in the Commonwealth. However, sister courts that have addressed this issue follow an analysis similar to that used in informer privilege cases in developing a test for disclosure of an observation post. *See United States v. Green*, 670 F.2d 1148 (D.C. Cir. 1981); *Jett v. Commonwealth*, 862 S.W.2d 908 (Ky. App. 1993); *Commonwealth v. Santiago*, 631 A.2d 1323 (Pa. Super. 1993), *appeal denied*, 646 A.2d 1177 (1994). We hold that the Commonwealth has a qualified privilege not to disclose the location.

The Sixth Amendment of the United States Constitution guarantees the right to confront and cross-examine witnesses, a "fundamental right essential to a fair trial." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). In some instances, however, limitations on the right of confrontation are necessary to protect the public interest. One such limitation developed by courts is the informer's privilege, which allows the Commonwealth in some circumstances to refuse to disclose the informant's identity. *See Daniel v. Commonwealth*, 15 Va. App. 736, 739, 427 S.E.2d 423, 425 (1993) (quoting *Gray v. Commonwealth*, 233 Va. 313, 328, 356 S.E.2d 157, 165, *cert. denied*, 484 U.S. 873 (1987)). In *Daniel*, we stated that " 'no fixed rule with respect to disclosure is justifiable' and explained that '[t]he problem is one that calls for balancing the public interest in protecting the flow of information [to the police] against the individual's right to prepare his defense.' " *Daniel*, 15

Va. App. at 740, 427 S.E.2d at 425 (quoting *Roviaro v. United States*, 353 U.S. 53, 62 (1957)). Courts must balance these interests on a case-by-case basis with no bright-line rule available.

■ The Supreme Court of Virginia held that "[t]he purpose of the [informer's] privilege is to further and protect the public's interest in effective law enforcement." *Gray v. Commonwealth*, 233 Va. 313, 328, 356 S.E.2d 157, 165, *cert. denied*, 484 U.S. 873 (1987) (citation omitted). A similar policy rationale supports a surveillance location privilege. *See Green*, 670 F.2d at 1155. In *Green*, the District of Columbia Circuit Court of Appeals recognized that "[t]he revelation of a surveillance location might . . . threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building." *Id.*

■ To compel the disclosure of the exact location of a surveillance post, appellant must "show that he needs the evidence to conduct his defense and that there are no other adequate alternative means of getting at the same point." *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982). Only then must the court balance the public interest in effective law enforcement and citizens' safety against the defendant's constitutional right to confront government witnesses. *See Daniel*, 15 Va. App. at 740, 427 S.E.2d at 425; *Harley*, 682 F.2d at 1020. If the court finds that a defendant's rights may be adversely affected, the court may review the location *in camera* and determine if revelation is necessary. *See Hicks v. United States*, 431 A.2d 18, 22 n.2 (D.C. 1981). If a court requires disclosure, the Commonwealth may still assert its privilege but must forego prosecution. *Daniel*, 15 Va. App. at 743-44, 427 S.E.2d at 427-28.

■ Other jurisdictions that have addressed this issue require a demonstrated need either to establish a possible obstruction or to show that certain buildings had an obstructed view. *See Santiago*, 631 A.2d at 1327. In deciding whether to compel disclosure, courts have considered the quality of any corroborating evidence, and the effectiveness of the cross-examination of the surveillance witness. *See State v. Garcia*, 618 A.2d 326, 334 (N.J. 1993). Assuring adequate cross-examination of government witnesses while preserving the privilege varies with the facts of each case. However, other courts have weighed the following facts before requiring disclosure: (1) the use of any vision-enhancing device, (2)

the officer's distance from the defendant, (3) the elevation of the post, (4) the existence of any special weather conditions, (5) the weaknesses in the officer's own vision or observation skills, (6) the adequacy of lighting, (7) the angle of sight, (8) the existence of any obstructions, and (9) any other relevant facts. *See Green*, 670 F.2d at 1157; *Garcia*, 618 A.2d at 334; *Santiago*, 631 A.2d at 1326-27.

Applying these principles to the instant case, we find that appellant did not establish a required need for disclosure of the observation post. Appellant failed to show any possible obstruction in the area, to question the officer about any obstructions, or to present any independent evidence of obstructions in the 1100 block of Queen Street. Appellant only generally alleged that disclosure was "material" to his effective cross-examination of the officer.

Even if the court was required to balance the competing interests, in this case, appellant was not prejudiced by the failure to disclose. The Commonwealth has a significant interest in protecting a cooperative owner of an apartment from reprisals in a neighborhood where drugs are sold regularly. Bunney testified that he told the owner that the location would not be revealed because of a fear of reprisals from drug dealers. Appellant's cross-examination of Bunney adequately protected his constitutional rights and assured him the "fundamental requirements of fairness." Appellant was able to cross-examine the officer as to the weather, the lighting, the binoculars, the distance, the elevation, the angle, and the specific block. Indeed, appellant had all the information he needed to determine the exact location of the post by using simple geometric principles. Also, appellant's own admission that he "passed the rock" for money corroborates Bunney's testimony. Under these facts, the trial court did not abuse its discretion in failing to compel the disclosure of the location of the observation post.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant also argues that the evidence was insufficient to sustain his conviction for cocaine distribution. On appeal, we view the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court . . . will not be set aside unless it . . . is plainly wrong or without evidence to support it." *Martin v.*

*Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The evidence established that Officer Bunney saw appellant put a rock-like substance into the hand of a woman subsequently found in possession of crack cocaine. Appellant stated that he passed the rock from one person to another for money, and the police confiscated $160 from him.

■ When a conviction is based upon circumstantial evidence, such evidence "is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Coleman v. Commonwealth*, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983) (citations omitted), *cert. denied*, 465 U.S. 1109 (1984).

■ Appellant argues that the evidence does not exclude the possibility that the woman obtained the cocaine from a third person at some time before or after her encounter with him. However, he produced no evidence to support this hypothesis. "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Hamilton v. Commonwealth*, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993) (citations omitted). We hold the evidence sufficient to support appellant's conviction.

For the reasons stated above, we affirm.

*Affirmed.*

Moon, C.J., and Baker, J., concurred.