674 A.2d 225

COMMONWEALTH of Pennsylvania, Appellee,

v.

Daniel RODRIQUEZ, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Francisco FELICIANO, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 24, 1995.

Decided April 3, 1996.

652

J. Michael Farrell, Philadelphia, for Dominic Rodriquez.

Catherine Marshall, Joan Weiner, Philadelphia, for Commonwealth.

Peter J. Lesh, New York City, for Francisco Feliciano.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

NIX, Chief Justice.

In these consolidated appeals, we must determine whether a surveillance site privilege exists such that the Commonwealth may withhold disclosure of the exact location used by police officers to observe criminal activity. In each case, both the trial court and Superior Court held that the Commonwealth could assert such a privilege. We granted allocatur and now affirm.

### *Commonwealth v. Rodriquez*

On July 3, 1991, at approximately 8:00 p.m., Officer George Fetters of the Philadelphia Police Department was positioned in a surveillance location near the intersection of North Lawrence and West Oxford Streets in Philadelphia. At a point approximately one hundred feet north and twenty feet above the intersection, Officer Fetters observed two white males in a white Pontiac pull over to the east side of North Lawrence

Street and come to a stop. The passenger of the vehicle got out and proceeded in a northbound direction as Rodriquez's co-defendant, Felix Ramos, approached him. The two men engaged in conversation. The passenger then handed Ramos an undetermined amount of United States currency, which prompted Ramos to turn to Rodriquez and state, "One." (R.R. at 29a). At this point, Rodriquez walked west on Oxford Street until he was outside the officer's field of vision. Approximately five seconds later, Officer Fetters saw Rodriquez walking back towards the unidentified passenger. The officer observed Rodriquez carrying a clear plastic bag containing a white powder which Rodriquez handed to the passenger. The passenger got back into the white Pontiac and left the scene.

During the course of his surveillance, Officer Fetters was in constant contact with four other back-up officers via hand-held police radio. Upon seeing what he believed to be a drug transaction, Officer Fetters gave the other officers a description of the white Pontiac, the passenger, and the direction that he was headed. The back-up officers were able to locate the vehicle and subsequently arrested the passenger. The officers also uncovered a clear plastic bag containing white powder which later was determined to be cocaine. The passenger was returned to the scene of the incident. Rodriquez and Ramos were also taken into custody after they were positively identified by Officer Fetters as the two men involved in the drug transaction.

Rodriquez was ultimately convicted in a non-jury trial of Knowing Possession of a Controlled Substance [1] and Possession with Intent to Distribute a Controlled Substance.[2] The Superior Court affirmed the judgment of sentence.[3] *Com-*

1. 35 Pa.C.S. § 780–113(a)(16).

2. 35 Pa.C.S. § 780–113(a)(30).

3. The trial court dismissed Rodriquez's post trial motions for failure to file a concise statement of matters complained of on appeal as required by Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. The Superior Court, citing this Court's decision in *Commonwealth v. Silver*, 499 Pa. 228, 452 A.2d 1328 (1982), correctly concluded that the application of the waiver provision of Rule 1925(b) is discretionary rather than mandatory. Thus, the court addressed the merits of Rodri-

*monwealth v. Rodriquez*, No. 945 Philadelphia 1993, 439 Pa.Super. 672, 653 A.2d 1303 (Aug. 9, 1994).

## Commonwealth v. Feliciano

On July 29, 1991, at approximately 7:00 p.m., Officer Patrick Brosnan of the Philadelphia Police Department was conducting surveillance from an undisclosed location near the intersection of Lawrence and Oxford Streets in Philadelphia. Officer Brosnan observed Feliciano's co-defendant, Felix Ramos, engaged in a conversation with the driver of a silver Ford LTD that had stopped at the southeast corner of the intersection. Ramos accepted an undetermined amount of United States currency from the driver and walked over to where Feliciano was standing. Feliciano then crossed the street to a vacant lot outside of Officer Brosnan's view. Shortly thereafter, Feliciano returned and approached the passenger side of the Ford LTD. He then tossed a bag through the passenger side window which landed on the dashboard of the car. The driver removed the bag and drove away. Feliciano was arrested as he attempted to walk away from the corner.

Following a non-jury trial on May 29, 1992, Feliciano was convicted of Knowing or Intentionally Possessing a Controlled Substance,[4] Possession with Intent to Manufacture or Deliver a Controlled Substance,[5] and Criminal Conspiracy.[6] On appeal, the Superior Court affirmed. *Commonwealth v. Feliciano*, No. 3763 Philadelphia 1992, 434 Pa.Super. 686, 641 A.2d 1221 (Dec. 28, 1993).

## Discussion

In each of the preceding cases, the defendant filed a pretrial motion which sought to compel disclosure of the exact surveil-

quez's appeal because it determined that Rodriquez's failure to file a concise statement of matters complained of on appeal did not impede its review of the issues presented on appeal. *Commonwealth v. Rodriquez*, No. 945 Philadelphia 1993, slip op. at 3, 439 Pa.Super. 672, 653 A.2d 1303 (Aug. 9, 1994).

4. 35 Pa.C.S. § 780–113(a)(16).

5. 35 Pa.C.S. § 780–113(a)(30).

6. 18 Pa.C.S. § 903.

lance location used by the police officers who observed the suspected criminal activity. It was asserted that without such information, the right to cross-examination would be impaired to such an extent that it would constitute a violation of the right to confrontation as provided by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution.

In each instance, the trial court denied the request for the specific location but permitted disclosure of the approximate location where the surveillance took place. In *Rodriquez*, it was disclosed that the officer's observation point was approximately one hundred feet north of the intersection of Oxford and Lawrence Streets and twenty feet above ground level. (R.R. at 27a–28a). Likewise, in *Feliciano*, the defense established through the cross-examination of Officer Brosnan that the surveillance location was one-and-one-half blocks north of the same intersection, above street level. (N.T. 5/29/92, 9–10, 12, 14–15). The Commonwealth declined to provide more specific information concerning the surveillance locations because those locations were still being used by police for undercover surveillance and such disclosure could endanger certain individuals.

Both cases were affirmed by the Superior Court on the basis of its holdings in *Commonwealth v. Jennings*, 428 Pa.Super. 297, 630 A.2d 1257 (1993), and *Commonwealth v. Santiago*, 429 Pa.Super. 135, 631 A.2d 1323 (1993), *appeal denied*, 538 Pa. 623, 646 A.2d 1177 (1994). In *Jennings*, the Superior Court held that the discovery of an officer's surveillance location falls within the discretionary disclosure requirements of Rule 305 B(2) of the Pennsylvania Rules of Criminal Procedure and that such information is subject to a qualified privilege. In so holding, the court relied in large part on the decision of the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The Court in *Roviaro* examined the circumstances under which the government's need to protect the identity of an undercover informant conflicts with the defendant's need to fairly and effectively defend against criminal charges. In

striking a balance between these two competing interests, the Supreme Court articulated the following guidelines:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 628, 1 L.Ed.2d at 646. This Court has previously accepted the foregoing balancing test in the related context of a confidential informant. *See Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967). We now hold that the same balancing test is equally applicable in cases where the Commonwealth asserts that disclosure of an exact surveillance location would jeopardize an ongoing investigation or place individuals in peril.

■ Like the Superior Court in *Jennings,* we find persuasive the reasoning of the District of Columbia Court of Appeals which observed that "law enforcement interests in surveillance positions are analogous to those concerning informants. If an observation location becomes known to the public at large, its value to law enforcement probably will be lost. The revelation, moreover, may jeopardize the lives of police officers and of cooperative occupants of the building." *Anderson v. United States,* 607 A.2d 490, 495 (D.C. 1992) (quoting *Hicks v. United States,* 431 A.2d 18, 21 (D.C. 1981)). Arguably, the reasons for maintaining the confidentiality of a surveillance site may be more compelling than the reasons for protecting the identity of a confidential informant. As the Court of Appeals of California noted:

> While we find the analogy to the informer privilege apt, we think it reasonable to afford even more protection to information of a surveillance location and thereby to people who permit their homes to be used as surveillance locations. An informer whose identity is revealed, rightly or wrongly,

probably has a fairly good chance of hiding because of the anonymity of our predominantly urban environment. But a person whose address is revealed has no place to hide. *People v. Montgomery,* 205 Cal.App.3d 1011, 1019, 252 Cal. Rptr. 779, 784 (1988). Although members of the public are not always called upon to assist the police by offering their homes or businesses for undercover surveillance, in those instances where they do, a trial judge should be mindful of the potential harm that could come to an individual whose address is revealed when the competing interests of disclosure are considered.

We additionally agree with the Superior Court's holding in *Jennings* that the disclosure of a confidential surveillance site is governed by Rule 305 B(2) of the Pennsylvania Rules of Criminal Procedure. Rule 305 B(2) provides, in pertinent part:

(2) *Discretionary With the Court.* In all court cases ... if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

. . . .

(d) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

Pa.R.Crim.P. 305 B(2)(d). Thus, whenever the Commonwealth asserts that a surveillance location is confidential, the defendant bears the initial burden of demonstrating that disclosure is necessary to conduct his defense. The Commonwealth would then have to come forward and explain the reasons why confidentiality must be preserved. At that point, the trial court must balance the relevant factors set forth by the United States Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in order to

determine whether the Commonwealth's interest in protecting the confidentiality of the surveillance location outweighs the defendant's need for the information as it relates to his ability to adequately defend against the pending criminal charges.

■ Applying these principles to the cases at hand, we conclude that both Rodriquez and Feliciano were provided with a sufficient degree of information so that they were able to effectively defend against the Commonwealth's case. The Superior Court in *Rodriquez* concluded that Rodriquez failed to meet his burden of "com[ing] forward with information that 'at least suggest[s] a *reasonable probability* that the information would be *helpful,* and that it is *necessary'....*" *Commonwealth v. Rodriquez,* No. 945 Philadelphia 1993, slip op. at 7, 439 Pa.Super. 672, 653 A.2d 1303 (Aug. 9, 1994) (quoting *Commonwealth v. Jennings,* 428 Pa.Super. at 306, 630 A.2d at 1262). Although Rodriquez vigorously challenges this conclusion, our review of the record confirms that no specific claim of necessity for disclosure of the exact location was offered to the trial court. As the Superior Court observed, "[A] defendant cannot rely solely on a claim that he was denied the opportunity to effectively cross-examine the officer." *Rodriquez,* No. 945 Philadelphia 1993, slip op. at 7.

A review of the record satisfies us that defense counsel for Rodriquez conducted a thorough and effective cross-examination of Officer Fetters based on the information that was available. Defense counsel was aware at a pretrial discovery hearing that the officer's surveillance location was one hundred feet north of the intersection of Lawrence and Oxford Streets and that he was approximately ten to twenty feet above street level. (R.R. at 17a). Officer Fetters subsequently confirmed at a suppression hearing that he was twenty feet above street level. (R.R. at 28a, 58a). It was also elicited that people were playing basketball on a court adjacent to a vacant lot on the northeast corner of Lawrence Street and that these people were between Officer Fetters' surveillance location and the place where the buyer's car was parked on Lawrence Street. (R.R. at 50a–58a). Using this information, defense counsel thoroughly cross-examined Officer Fetters as

to his ability to view the illicit drug transaction clearly and without obstruction. It is apparent from a review of this cross-examination that defense counsel had deduced the approximate location of the confidential surveillance site and was able to conduct an effective cross-examination with that information. Accordingly, we must agree with the Superior Court that Rodriquez has failed to meet his burden of explaining how a more detailed disclosure of the confidential surveillance location would have been necessary to his defense.

We likewise find that Feliciano has failed to meet his burden of demonstrating that disclosure of the exact surveillance was necessary. Feliciano claims that he needed to know the precise location where the surveillance took place in order to "show, through extrinsic photographic evidence, that the observing officer's view into the buyer's car was blocked by light reflections on the windshield." Brief for Appellant at 17. Although this appears to be a more specific and compelling basis for disclosure, our review of the record satisfies us that disclosure of the exact surveillance location would not have assisted the defense in proving this theory. With respect to this issue, the following exchange took place on cross-examination:

Q. [by defense counsel] Would it be fair to say that there was a reflection coming off the windshield [of the buyer's car]?

A. [by the surveillance officer] No.

. . . .

Q. To the best of your recollection, you saw no reflection?

A. There was no reflection on the windshield when I looked through.

(N.T. 5/29/92, 23–24). Officer Brosnan, the surveillance officer, was shown a photograph of the intersection taken from the perspective of what was described as the approximate surveillance location. (N.T. 5/29/92, 23). The photograph depicted a car parked in the vicinity of where the officer testified that he had observed the buyer's car. (N.T. 5/29/92,

23). Although Officer Brosnan testified that a glare was present on the windshield of the car in the photograph, he reiterated that there was no such glare when he observed the transaction between Feliciano and the buyer. (N.T. 5/29/92, 24). Based on this line of cross-examination, we fail to see how a more precise description of the surveillance location would have enabled defense counsel to expand on the theory that the officer's view was impaired by light glare. Had Officer Brosnan's exact surveillance location been disclosed, it is not apparent, and Feliciano does not explain, how this cross-examination would have been different or more effective. Thus, we conclude that the Superior Court was correct in holding that the trial court did not abuse its discretion in precluding disclosure of the exact confidential surveillance location.

Finally, we must address the argument of both Appellants that our recent holding in *Commonwealth v. Payne*, 540 Pa. 54, 656 A.2d 77 (1994), is applicable to our resolution of the question of disclosure. In *Payne*, an alleged drug sale between the defendant and an undercover state trooper was witnessed by a confidential informant. At trial, the only Commonwealth witness was the trooper, and the defendant raised a defense of mistaken identity. In order to challenge the trooper's identification, the defendant sought to compel the prosecution to produce the confidential informant. The trial court denied this request, and the defendant was convicted. The Superior Court affirmed.

On appeal, we stated that "[w]here other corroboration of the officer's testimony exists, disclosure of the informant's identity is ... not necessarily required." 540 Pa. at 59, 656 A.2d at 79. However, where, as in Payne's case, the confidential informant was the only material witness other than the lone police officer, we held that fundamental fairness mandates disclosure of the informant's identity. Rodriquez and Feliciano contend that like *Payne*, the Commonwealth's case in each instance rests on the uncorroborated testimony a single police officer. We disagree.

In each Appellant's case, the surveillance officer relayed a description of the observed individuals to backup officers who made immediate arrests based on the descriptions that they had received. Thus, there were other officers on the scene who were able to corroborate each surveillance officer's description. In contrast, the undercover officer in *Payne* was the only individual (other than the informant) involved in the transaction. Furthermore, the defendant in *Payne* was not arrested until seven months after the transaction. In addition, unlike *Payne*, the withheld information in either of the instant cases could not offer a version of the events that conflicts with the testimony of the surveillance officers. The most that the defense could have gained from disclosure of the actual surveillance location is further information to cast doubt on the ability of the officers to clearly view the illicit drug transactions.[7] The facts of these cases are clearly distinguishable from *Payne* and therefore compel a different result.

Because neither Rodriquez nor Feliciano has met his burden of demonstrating a need for the exact location of the confidential surveillance site used by police, we conclude that Appellants' rights to due process and cross-examination were not infringed. Accordingly, the Orders of the Superior Court are affirmed.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

---

7. As we have already indicated, there has been no showing in either case that additional information concerning the precise location of the surveillance location would have been helpful to the defense.