COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


ORLANDO LAWRENCE COVINGTON, SR.
                                          MEMORANDUM OPINION* BY
v.        Record No. 2450-02-2             JUDGE SAM W. COLEMAN III
                                              NOVEMBER 25, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

Christopher L. Anderson (Michael N. Herring; The McEachin Law
Firm, P.C.; Bricker & Herring, on brief), for appellant.

Steven A. Witmer, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Orlando Lawrence Covington, Sr. appeals his bench trial conviction for second-degree

murder.  He argues the evidence is insufficient to support his conviction because it fails to prove

malice or an intent to harm.  For the reasons that follow, we disagree and affirm the trial court's

decision.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence proved that on Friday afternoon, November 30, 2001,

three-year-old Jordan Nelson left his babysitter's house to spend the weekend with Covington, a

friend of the family.  As previously arranged by Tracie Nelson, Jordan's mother, Covington was

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

going to babysit over the weekend and assist in toilet training the toddler. Tracie Nelson testified Jordan was in good health Thursday night and that she noticed no bruises or injuries on Jordan's body when she dressed him Friday morning. Brenda Whitaker, Jordan's babysitter, testified Jordan did not display any signs of injury or illness on November 30 before Covington picked him up at her house. Nahir Perez, Jordan's pre-school teacher, also testified she did not observe any injuries on Jordan that day.

According to Covington, after he picked up Jordan from Whitaker's house they went to church. Covington testified that while there Jordan fell and sustained a rug burn to his face.

Lieutenant Chris Jones testified that in response to an emergency call from Covington, he arrived at Covington's house during the early morning hours of December 2, 2001. Covington was downstairs when Jones arrived, and Jordan was upstairs having a seizure on the floor. Chris Wiggins, an EMS provider, testified Covington indicated Jordan had had two to three seizures during the previous two hours. As Wiggins removed Jordan's clothing to examine the child, he noticed multiple contusions to the right side of Jordan's skull, his chin, left shoulder, sternum, chest, clavicle, and both legs. Wiggins later encountered Covington in the hospital waiting room. Wiggins heard Covington state that Jordan's mother, Tracie, was out of town and unavailable. Officer Floyd Boswell, who was working in an off-duty capacity at the hospital when Covington arrived with Jordan, also heard Covington tell the nurses he could not contact Jordan's mother.

Forensic nurse examiner Kim Wieczorek testified Jordan's injuries were consistent with blunt force trauma from an external force. She noted Jordan also had sustained abrasions on his ankle and genital injuries. She opined it was unlikely Jordan could have sustained the brain injuries on Friday night at the church, as suggested by Covington.

Dr. William Shafer examined Jordan in the emergency room. Shafer testified that based upon Jordan's cluster of injuries he suspected the boy had been abused and suffered, in part, from Shaken Baby Syndrome. Shafer opined all of Jordan's injuries, with the exception of the facial abrasion, occurred contemporaneously.

Social worker Gretchen Icard interviewed Covington at the hospital. Covington initially told Icard only that Jordan sustained a rug burn to his face on Friday night, that he spent all day Saturday with the child, and stopped at a store on the way home that evening. After the extent of Jordan's injuries were ascertained and reported to Covington, Covington contacted Icard and stated that Jordan had also fallen while skateboarding at the store, that he hit his head on the floor, but appeared fine the rest of the night.

Dr. Marcella Fierro testified Jordan died from blunt force trauma to his head. Fierro explained Jordan suffered from severe subarachnoid and subdural hemorrhaging from the injuries to his head. He had bruises on his face, ear and eye and a large bruise on his cheek. She identified seven points of impact on the victim's head and explained loss of consciousness and seizures were among the symptoms typically caused by such injuries. She described numerous pattern injuries over Jordan's body and opined they were consistent with being hit with a hairbrush. Fierro also identified significant traumatic injuries to Jordan's scrotum and penis. There were several linear abrasions consistent with scratch marks on the bottom of the scrotum. Fierro stated these injuries were caused by blunt force trauma, probably squeezing. The injuries to the scrotum and penis were fresh and had been inflicted within hours to one day from the time of Jordan's death. Jordan also suffered extensive internal injuries, likely caused by blunt force trauma to Jordan's abdominal area. She further testified the severity and extent of Jordan's head and other injuries could not have been caused by falling at the church or at the store, as described by Covington.

Dr. Robin Foster testified children are often abused during the course of "potty training," and the injuries to Jordan's genital area did not appear accidental but instead were consistent with inflicted injuries.

ANALYSIS

Covington asserts the Commonwealth failed to establish he acted with malice or an intent to harm the child.

"Second degree murder is defined as a 'malicious killing' of another person." Lynn v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998) (citation omitted), aff'd, 257 Va. 239, 514 S.E.2d 147 (1999). Second-degree murder does not require a specific intent to kill. See Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989). The Commonwealth must merely prove "'a malicious purpose to do the deceased a serious personal injury or hurt.'" Id. (quoting Dock's Case, 62 Va. (21 Gratt.) 909, 913 (1872)). Two factors which the trier of fact may consider, among others, in determining the existence of malice include the disparity in size between the assailant and his victim and the brutality of the assault. See Epperly v. Commonwealth, 224 Va. 214, 231, 294 S.E.2d 882, 892 (1982).

The evidence established Jordan was in good health and without physical injuries up until the time Covington called for him at the babysitter's house. However, after spending the weekend with Covington, Jordan had suffered numerous severe injuries which resulted in his death after his arrival at the hospital. Furthermore, Covington provided inconsistent statements and reported he had no way of contacting Jordan's mother because she was out of town when, in fact, she was at home and could have been contacted by telephone. Covington provided implausible accounts of how Jordan could have received such severe and extensive injuries. Based upon the medical evidence, the fact finder could infer that the injuries had been intentionally inflicted. The evidence indicated the injuries were inflicted when Jordan was in the

sole and exclusive custody of Covington. "When a conviction is based upon circumstantial evidence, such evidence 'is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Hollins v. Commonwealth, 19 Va. App. 223, 229, 450 S.E.2d 397, 400 (1994) (citation omitted). "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

Covington was responsible for Jordan while the child was in his care and confirmed that he had exclusive custody of and was with the child the entire time that he picked him up from his mother until when he took the child to the hospital. Covington testified Jordan received his injuries from a fall at church and from falling off a skateboard in a store on the evening of November 30. He explained that the following day he attended a parade with Jordan and claimed Jordan began having seizures during the early morning hours on December 2, at which time he contacted the police. However, Foster testified that had a child sustained the injuries Jordan exhibited on Friday night as claimed by Covington, the child would not have been able to go to a parade, eat out, or go shopping the following day. Additionally, Foster explained Jordan's extensive injuries were "consistent with inflicted, intentional non-accidental injuries."

"Intent in fact is the purpose formed in a person's mind, which may be shown by the circumstances surrounding the offense, including the person's conduct and his statements. And a person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977) (citation omitted). The extent and severity of Jordan's injuries, combined with the vast disparity in size between Covington and his victim, were sufficient for the court, sitting as fact finder, to conclude that Covington maliciously inflicted the injuries to Jordan with the intent to cause the boy serious

physical harm.  The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Covington was guilty of second-degree murder.

Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>