COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Bray and Fitzpatrick
Argued at Richmond, Virginia


LINDA I. THOMAS

v.      Record No. 0671-95-2        MEMORANDUM OPINION* BY
                                    JUDGE JOHANNA L. FITZPATRICK
COMMONWEALTH OF VIRGINIA                  MARCH 26, 1996

            FROM THE CIRCUIT COURT OF NORTHUMBERLAND COUNTY
                  Joseph E. Spruill, Jr., Judge

            Wayne L. Emery (Wilkins, Davison & Emery, on
            brief), for appellant.

            Patricia L. McKenney, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.


     Linda I. Thomas (appellant) was convicted in a bench trial
of two counts of making or uttering a false or forged
prescription in violation of Code § 18.2-258.1(E).  On appeal,
she argues that the trial court erred in finding the evidence
sufficient to convict because the Commonwealth failed to prove
that:  (1) the prescriptions were for drugs; (2) the
prescriptions were forged; and (3) she made or uttered the
prescriptions.  Finding no error, we affirm.

                        **BACKGROUND**

     On July 27, 1994, appellant and a companion entered the
pharmacy owned by Dr. Michael J. Mangano, a licensed pharmacist.
 Dr. Mangano's clerk handed him two prescriptions purportedly

---

*Pursuant to Code § 17.116.010 this opinion is not
designated for publication.

ordered by Dr. James F. Hamilton. The prescriptions were for Tylenol No. 4, which contains codeine, and Xanax, an anxiety medication. Dr. Mangano had filled over 5,000 of Dr. Hamilton's prescriptions and was familiar with both his signature and his method of prescribing medication. He called Dr. Hamilton to verify the prescriptions. After this telephone call, he immediately notified the police of a possible irregularity and filled the prescriptions.

Dr. Mangano did not see who initially left the prescriptions but called the name, "Carrie Brown," which was listed on the requests. Appellant responded to the name, and Dr. Mangano "counseled her" about the pills, referring to her as "Carrie Brown." After appellant left the store with the medication, Lieutenant Wilkins and Captain Neale of the Northumberland County Sheriff's Department confronted her in the parking lot and questioned her about the prescriptions. Appellant was "very vague at first." She then said Carrie Brown was a friend, but could not give an address, phone number, or other identifying information for her.

## PRESCRIPTION FOR "DRUGS"

Appellant argues that the Commonwealth failed to prove that the items requested in the prescriptions were "drugs." We disagree.

"When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the

2

light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom." Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Code § 18.2-258.1 provides as follows:

A. It shall be unlawful for any person to obtain or attempt to obtain any drug or procure or attempt to procure the administration of any controlled substance or marijuana: (i) by fraud, deceit, misrepresentation, embezzlement, or subterfuge; or (ii) by the forgery or alteration of a prescription or of any written order; or (iii) by the concealment of a material fact; or (iv) by the use of a false name or the giving of a false address.

B. It shall be unlawful for any person to furnish false or fraudulent information in or omit any information from, or willfully make a false statement in, any prescription, order, report, record, or other document required by Chapter 34 of Title 54.1.

C. It shall be unlawful for any person to use in the course of the manufacture or distribution of a controlled substance or marijuana a license number which is fictitious, revoked, suspended, or issued to another person.

D. It shall be unlawful for any person, for the purpose of obtaining any controlled substance or marijuana, to falsely assume the title of, or represent himself to be, a manufacturer, wholesaler, pharmacist, physician, dentist, veterinarian or other authorized person.

E. It shall be unlawful for any person

3

> to make or utter any false or forged
> prescription or false or forged written
> order.
>
>     F.  It shall be unlawful for any person
> to affix any false or forged label to a
> package or receptacle containing any
> controlled substance.
>
>     G.  This section shall not apply to
> officers and employees of the United States,
> of this Commonwealth or of a political
> subdivision of this Commonwealth acting in
> the course of their employment, who obtain
> such drugs for investigative, research or
> analytical purposes, or to the agents or duly
> authorized representatives of any
> pharmaceutical manufacturer who obtain such
> drugs for investigative, research or
> analytical purposes and who are acting in the
> course of their employment; provided that
> such manufacturer is licensed under the
> provisions of the Federal Food, Drug and
> Cosmetic Act; and provided further, that such
> pharmaceutical manufacturer, its agents and
> duly authorized representatives file with the
> Board such information as the Board may deem
> appropriate.
>
>     H.  Any person who shall violate any
> provision herein shall be guilty of a Class 6
> felony.

(Emphasis added).  The Virginia Drug Control Act defines

"prescription" as "an order for drugs or medical supplies."  Code

§ 54.1-3401.  "While penal statutes must be strictly construed

against the Commonwealth, '[t]he plain, obvious, and rational

meaning of a statute is always preferred to any curious, narrow

or strained construction; a statute should never be construed so

that it leads to absurd results.'"  Newton v. Commonwealth, 21

Va. App. 86, 89, 462 S.E.2d 117, 119 (1995) (quoting Branch v.

Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)).

    Examining the plain meaning of Code § 18.2-258.1(E), we hold

4

that the term "prescription" refers to "an order for drugs or medical supplies." In this case, Dr. Mangano testified that the prescriptions at issue were for pain and anxiety medicine. One of the prescriptions was for Tylenol Number 4, which contains sixty milligrams of codeine. This testimony was sufficient to identify the substances listed in the prescriptions as "drugs."

### LAY WITNESS TESTIMONY AS TO HANDWRITING

Appellant next argues that the trial court erred in admitting Dr. Mangano's testimony to establish that the signatures on the prescriptions were not Dr. Hamilton's.

At trial, Dr. Mangano testified that he had filled over 5,000 prescriptions for Dr. Hamilton and was familiar with his signature. He examined the two prescriptions and stated that they were not signed by Dr. Hamilton. He also testified that Dr. Hamilton did not normally prescribe the types or quantities of drugs contained in the prescriptions, nor the number of refills indicated. Appellant argued that, in the absence of a showing that Dr. Hamilton was unavailable, Dr. Mangano's lay opinion as to the authenticity of the signatures was inadmissible.

"[A] [lay] witness is competent to testify to the genuineness of a controverted signature if he has the proper knowledge of the party's handwriting." Pepper v. Barnett, 63 Va. (22 Gratt.) 405, 407 (1872). The lack of familiarity with the handwriting of another affects the weight of the testimony, not its admissibility. Id. The party offering the handwriting

5

evidence is not required to show that the author is unavailable.
See Foulkes v. Commonwealth, 41 Va. (2 Rob.) 836, 841 (1843).
See also 1 Charles E. Friend, The Law of Evidence in Virginia
§ 15-9, at 627-28 (4th ed. 1993).

In the instant case, the evidence established that Dr. Mangano was very familiar with Dr. Hamilton's signature, having filled over 5,000 prescriptions written by Dr. Hamilton. After questioning the authenticity of the prescriptions, Dr. Mangano called Dr. Hamilton to verify them and immediately after the conversation called the police. Dr. Mangano testified that the signatures on the two prescriptions were not Dr. Hamilton's and that Dr. Hamilton did not normally prescribe these types and quantities of drugs, nor the number of refills. Additionally, the Commonwealth introduced into evidence, without objection, an authentic prescription of Dr. Hamilton that clearly differed from the two presented in this case. The testimony of Dr. Mangano was clearly admissible, and his intimate knowledge of Dr. Hamilton's signature was entitled to great weight. The pharmacist's testimony was competent, not inherently incredible, and was sufficient to prove beyond a reasonable doubt that the prescriptions had been forged.

## UTTERING A PRESCRIPTION

Lastly, appellant argues that the evidence is insufficient to show that she made or uttered the prescriptions.

"Uttering" is defined as "'[t]o put or send [as a forged

6

check] into circulation . . . to utter and publish.'  It is an assertion by word or action that a writing known to be forged is good and valid." Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986) (quoting Bateman v. Commonwealth, 205 Va. 595, 599-600, 139 S.E.2d 102, 106 (1964)).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence proved that appellant entered the pharmacy with a companion.  Dr. Mangano's store clerk then handed him two prescriptions to be filled.  After Dr. Mangano filled the prescriptions, he called the name "Carrie Brown," listed on the prescriptions.  Appellant responded, and Dr. Mangano proceeded to counsel her on the medicine.  Appellant then left the store with the drugs.  Under these circumstances, the trial court was entitled to infer that appellant had not only picked up the drugs for "Carrie Brown," but also was the one who gave the prescriptions to the clerk.  The trial court was not required to believe appellant's self-serving testimony that the prescriptions were for a friend.  See Daniel v. Commonwealth, 15 Va. App. 736, 744, 427 S.E.2d 423, 428 (1993) ("[T]he trial court as the trier of fact is not required to accept any of [appellant's] testimony and may rely on it in whole, in part, or reject it completely.").  Thus, the evidence is sufficient to prove beyond a reasonable doubt that appellant made or uttered the forged prescriptions in violation of Code § 18.2-258.1(E).

Accordingly, the judgments of the trial court are affirmed.

<u>Affirmed</u>.