## Alexandria

### LEONEL OLIVA

v.

### COMMONWEALTH OF VIRGINIA

No. 0905-93-4

Decided January 17, 1995

COUNSEL

David Hall (Phillips, Beckwith & Hall, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—In this appeal from a conviction for forcible rape, we hold that the trial judge erred by refusing to admit evidence which tended to show that another person committed the rape. The trial judge's rulings unduly restricted the defendant's ability to present relevant and material evidence in his own defense. Because Oliva proffered evidence that directly pointed to another person as the rapist, and offered other circumstantial evidence that tended to corroborate his more direct proof, we cannot say that the excluded evidence would not have raised a reasonable doubt about the victim's identification of the defendant as her assailant. Consequently, the error was not harmless. Therefore, we reverse the conviction and remand the case for retrial.

On September 29, 1991, as "it was getting dark," two men assaulted a woman in a shopping center parking lot in the Reston area of Fairfax County. We will refer to the victim as Jane. One man held Jane on the hood of her car while the other man pulled down her shorts and underpants and raped her. After the incident, the two men fled into a nearby wooded area.

Jane described the man who raped her as Hispanic, 5′7″ tall, medium build, brown hair and eyes, curly hair, wearing a grey or light blue oxford shirt, at least partly unbuttoned, with the sleeves rolled up. With her assistance, a police artist drew a composite sketch of the rapist. The police circulated the drawing at a nearby apartment complex, which was located in the direction that the

rapist had fled and near the rape scene. The maintenance supervisor at the apartments told the police that the composite resembled Leonel Oliva, an occupant of the apartments. A police investigator obtained a photograph of Oliva and on October 4, presented it as part of a photo array to the victim. She immediately identified Oliva's photograph as being that of the person who had raped her. She had little or no recollection of the other man who had held her because her attention was directed toward the rapist. At trial, she testified and identified the defendant, Leonel Oliva, as the person who had raped her.

On October 4, the police investigator also showed the photographic display to Charles Fields. Fields, who had been working at a service station near the rape scene, had seen a man at the time the rape occurred run from a wooded area toward the same apartment complex where Oliva lived. He could not identify anyone in the photographic array as the person he had seen running. He testified, however, that he would be unable to recognize or identify the man he saw run by the service station. Nevertheless, Fields testified that Leonel Oliva was not the person he had seen running on the night of the rape. Significantly, Fields also testified that the man he saw running was "young looking" with short black curly hair, "wearing baggy clothes—a baggy shirt that was buttoned about halfway up," "a button-up shirt" with "rolled-up sleeves."[1]

In his defense, Oliva presented four alibi witnesses who testified that on September 29, 1991, they had been with Oliva at a soccer game in Manassas. They testified that after the game, they had returned to the Herndon area at "almost" 8:00 p.m., approximately forty-five minutes after the rape had occurred. In addition to the alibi evidence, Oliva subpoenaed Francisco Escobar, another young Hispanic man who also resided in the same apartments. His purpose in doing so was to show that Escobar resembled him, that Escobar also resembled the representation depicted in the composite drawing, that he too lived in the vicinity where the rape had occurred, and that following the rape Escobar had altered his appearance by changing his hair color. Oliva sought to

---

[1] Oliva told police after he had been arrested that on September 29, 1991, he had worn a blue shirt with the sleeves rolled up. More importantly, Fields' description of the person he saw running was strikingly similar to the victim's description of the clothing worn by the person who raped her.

introduce the evidence about Escobar in order to raise a doubt as to whether the victim mistakenly identified Oliva as her assailant. Escobar could not be found and was not present at trial.

At trial, Oliva proffered into evidence a photograph of Escobar to prove the resemblance between Escobar and himself. The trial judge refused to admit Escobar's photo. In addition, Oliva proffered testimony from Wilfredo Argumedo, Escobar's roommate, who would have testified that Escobar had "frosted" his hair or changed his hair color to blond after September 29, 1991. Oliva also vouched that a person in the management of the apartment complex would testify that he or she had confused Escobar with Leonel Oliva on an earlier occasion. The judge rejected the photograph of Escobar and the related testimony because the photograph had not been "tied to the composite drawing as a foundation."

Additional testimony from Charles Fields was proffered and refused by the trial judge. Fields would have testified that the proffered photograph of Escobar "looks similar to the [man] I saw running, because he has the kind of hair that the other guy had. His [referring to Escobar's] face is slimmer and he's slimmer than the guy that's here [referring to the defendant]." The trial judge rejected this testimony, also, because it was not "tied to the composite" drawing and was tied to the photograph, which had not been admitted.

## I.

The right "to call for evidence in [one's] favor" is guaranteed by the Virginia Constitution. *See* Art. I § 8, Virginia Constitution. *See generally Massey v. Commonwealth*, 230 Va. 436, 442, 337 S.E.2d 754, 757-58 (1985); *see Cremeans v. Commonwealth*, 104 Va. 860, 52 S.E. 362 (1905). "In Virginia, evidence that a crime was actually committed by someone other than the accused is admissible for the purpose of generating a reasonable doubt of the guilt of the accused." *Weller v. Commonwealth*, 16 Va. App. 886, 890, 434 S.E.2d 330, 333 (1993) (quoting Charles E. Friend, *The Law of Evidence in Virginia*, § 150 (3d ed. 1988)). Evidence tending to show that someone other than the defendant committed the crime generally raises a factual question for the jury. *Rees v. Commonwealth*, 203 Va. 850, 869, 127 S.E.2d 406, 419 (1962), *cert. denied*, 372 U.S. 964 (1963). A de-

fendant is entitled to present his version of the facts along with that of the prosecution so the jury may decide where the truth lies. *Massey*, 230 Va. at 442, 337 S.E.2d at 757-58.

The right to present evidence in one's defense does not, however, permit a defendant to introduce evidence that merely suggests or insinuates that because a third party resembles the accused, the third party *may* have some connection to the crime. Such evidence is irrelevant; it tends to confuse and mislead a jury unless "evidence [has been] introduced . . . [that] point[s] directly to guilt of a third party." *Weller*, 16 Va. App. at 890, 434 S.E.2d at 333. Thus, only "where there is a trend of facts and circumstances tending clearly to point out some other person as the guilty party, the [defendant] may introduce any legal evidence which is available tending to prove that another person committed the crime with which he is charged." *Karnes v. Commonwealth*, 125 Va. 758, 766, 99 S.E. 562, 565 (1919). Therefore, the admissibility of circumstantial evidence tending to prove that a third party committed the crime is left to the sound discretion of the trial judge. *Id.*

The question before us is not whether Oliva's proffered evidence was sufficient to prove that a third person committed the rape. Rather, the question is whether "facts and circumstances tend[ed] clearly to point out some other person as the guilty party," thereby raising a question for the jury whether reasonable doubt existed of Oliva's guilt. If the evidence Oliva presented and proffered clearly or directly pointed to Escobar or to another person as the guilty party, the trial judge was required to admit that evidence which was relevant and material, provided that it was otherwise admissible. Thereafter, other "circumstantial evidence tending to prove the guilt of a third party is to be liberally received." *Weller*, 16 Va. App. at 890, 434 S.E.2d at 333.

## II.

The proffered testimony of Charles Fields is central to whether Oliva presented evidence that pointed "clearly" or "directly" to a third party as the person who committed the rape. Jane had described her assailant as having brown curly hair, wearing a grey or light blue oxford shirt, partly unbuttoned and with the sleeves rolled up, and who ran into the woods after assaulting her. At the same time and location, Charles Fields had seen a young man

with short curly black hair, who ran from the woods, wearing a partly unbuttoned shirt with rolled-up sleeves. Jane's description of her assailant and Fields' description of the person he saw running are sufficiently similar that a reasonable fact finder could conclude that Fields had seen Jane's assailant. Although Fields did not see the fleeing person in sufficient detail to be able to identify him, he did sufficiently observe the person's general characteristics so that when he saw Francisco Escobar's photo, he responded, "[he] looks similar to the [man] I saw running." Fields went on to explain that the person in the photo, who was Escobar, had the same type hair as did the person he saw running, "his face is slimmer and he's slimmer than the guy that's here," indicating that the person he saw running was slimmer than Oliva, who more closely resembled the size and appearance of the person depicted in the photo.

If the person who Fields saw was the rapist rather than his accomplice, which the jury could have concluded from the similarity in his description and Jane's description of her rapist, then Fields' testimony clearly pointed directly to a person other than Oliva as the person who may have committed the rape. Not only did Fields testify that Oliva was not the person he saw running, Fields' proffered testimony was that the photograph of Francisco Escobar "looks similar" to the person he saw running from the scene.

Although the jury heard Charles Fields testify that Oliva was not the person he saw running, Oliva was entitled to have the jury also consider that the person Fields had seen running bore a resemblance in general physical appearance and was dressed almost identically to the person Jane described as her assailant. The jury was entitled to consider Fields' proffered testimony that the person he saw "looks similar" to the person in the photograph identified as Francisco Escobar. That evidence directly pointed to a third person as the person who may have been the rapist. The proffered photograph of Escobar and the other circumstantial evidence which tended to corroborate Oliva's claim that another person, perhaps Escobar, committed the crime was also relevant and admissible, provided that it was not inadmissible on other grounds. Accordingly, the trial judge erred by not admitting the evidence from Charles Fields which tended to show that a person other than the defendant committed the crime and that Escobar "looks similar" to the person he saw.

In support of that evidence, Oliva was also entitled to show that Francisco Escobar resided in the same apartment complex near where the rape occurred, that based on a properly authenticated photograph of Escobar he "looks similar" to the person Fields saw running, that Escobar altered his appearance on a date after the incident, and that a similarity existed in the appearance between Escobar and Oliva.

For the foregoing reasons, we reverse Oliva's conviction and remand the case to the trial court for retrial if the Commonwealth be so advised.

*Reversed and remanded.*

Barrow, J., and Willis, J., concurred.