COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Senior Judge Duff
Argued at Richmond, Virginia


IDA LYNNETTE DAVIS, S/K/A
 IDA LYNETTE DAVIS
                                        OPINION BY
v.  Record No. 0269-96-3        JUDGE JAMES W. BENTON, JR.
                                     SEPTEMBER 30, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                    Mosby G. Perrow, III, Judge

         Elizabeth P. Murtagh, Assistant Public
         Defender, for appellant.

         Ruth Ann Morken, Assistant Attorney General
         (James S. Gilmore, III, Attorney General, on
         brief), for appellee.


     Ida Lynnette Davis was convicted by a jury of distribution

of cocaine in violation of Code § 18.2-248.  On appeal, Davis

argues that the trial judge erred in (1) denying her pretrial

motion for disclosure of the location of the police officers'

observation post; (2) prohibiting her from calling witnesses to

rebut the officer's testimony regarding his ability to view the

place where the officer alleged Davis made the distribution; (3)

denying portions of her pretrial Brady motion for discovery of

exculpatory evidence; (4) denying her pretrial request for

production of "mug shots" of other women arrested in the same

location for selling cocaine; and (5) denying her motion to

strike at the close of all the evidence.  For the reasons that

follow, we reverse the conviction and remand the case for further

proceedings consistent with this opinion.

I.

The evidence proved that from 7:15 p.m until 8:30 p.m. on July 14, 1995, police investigators J. S. Taylor and A. S. Thomas conducted a surveillance of the 2100 block of Main Street in Lynchburg.  Officer Taylor testified that Davis was on the sidewalk with another woman, that he had known Davis for almost two years, that he had seen her more than ten times, and that he previously had seen her from a distance of a "[f]ace-to-face conversation."

Officer Taylor observed another individual, later identified as Linda Jones, arrive driving a white Toyota.  Taylor testified that Jones exited the car, approached Davis on the sidewalk in front of a house at 2110 Main Street and gave Davis some folded paper resembling money.  Davis went inside the house.  When Davis returned, she dropped an "off-white chunk" from her closed right fist into Jones' extended hand.  Jones looked at the item, put the item into the right front pocket of her shorts, entered her car and drove away.

A police officer stopped Jones after she drove away and seized the item that Jones put in her pocket.  The item the officer seized from Jones was later tested and found to be cocaine.

Jones testified that she drove a white Toyota to 2110 Main Street on July 14, 1995 to purchase drugs.  Jones remembered buying cocaine but could only describe the seller as a heavy,

black woman with curls in her hair. On cross-examination, counsel for Davis asked Jones whether Davis was the seller. Jones stated, "No. It was not her." On redirect, Jones testified that she was unable to identify the seller and that she did not know whether Davis was the seller.

After the Commonwealth rested, Davis called her grandmother as a witness. Davis' grandmother testified that she resides at 2110 Main Street and that Davis resides on another street with Davis' mother. The grandmother testified that on July 14, 1995, she was home because two men were renovating her kitchen at 2110 Main Street. Davis arrived in the afternoon, helped the grandmother and cleaned household items on the sidewalk and the porch. Around 7:00 p.m. that day, Davis was moving the items back into the house. The grandmother left the house at approximately 7:20 p.m. and returned at 10:40 p.m. The grandmother also testified that "the street's always full of people."

Davis testified in her own defense. She testified that she did not know Jones, had never seen her before and did not sell drugs on July 14, 1995. Davis further testified that on July 14, 1995 she was washing her grandmother's stove and cabinets on the front porch and sidewalk. She also testified that many people were standing on the sidewalk that evening.

The trial judge overruled Davis' motion to strike the evidence. The jury found Davis guilty of distribution of

cocaine, and the judge imposed the jury's sentence of five years in the penitentiary and a fine of $500.

## II.

Davis argues that the trial judge erred in denying her pretrial "Motion to Compel Disclosure of Observation Post." We agree.

"[T]he Commonwealth has a qualified privilege not to disclose the location" of a police observation post. Hollins v. Commonwealth, 19 Va. App. 223, 226, 450 S.E.2d 397, 399 (1994). The Commonwealth's privilege is limited, however, by "the fundamental requirements of fairness," which require consideration of an accused's "right to prepare [a] defense." Roviaro v. United States, 353 U.S. 53, 60, 62 (1957). Setting forth the analysis applicable to requests for disclosure of observation posts, this Court stated the following in Hollins:

> To compel the disclosure of the exact location of a surveillance post, [a defendant] must "show that [she] needs the evidence to conduct [her] defense and that there are no other adequate alternative means of getting at the same point." Only then must the court balance the public interest in effective law enforcement and citizens' safety against the defendant's constitutional right to [prepare a defense and] confront government witnesses.

19 Va. App. at 227, 450 S.E.2d at 399 (citation omitted).

After a pretrial evidentiary hearing, the trial judge overruled Davis' motion on the ground that Davis had failed to prove she needed to know the location of the observation post.

4

Davis contends that she had proved a need for the information in order to prepare her case and properly cross-examine the police officers.  We agree that the record contains such proof.

In Hollins, this Court found that Hollins failed to show "a required need for disclosure of the observation post" because he "failed to show any possible obstruction in the area, to question the officer about any obstructions or to present any independent evidence of obstructions" in the relevant block of the street. See id. at 228, 450 S.E.2d at 400.  Unlike in Hollins, counsel for Davis offered independent evidence showing that obstructions existed in the area.  Officer Taylor testified that when he observed Davis on July 14 he was "[w]ithin a city block" from Davis and used binoculars to aid his vision.  Although Officer Taylor testified that he "had clear vision, no obstructions," Davis offered into evidence numerous photographs that revealed, in the area around the 2100 block of Main Street, trees, other foliage, telephone poles, columns and railings.  The investigator who photographed the area testified that "[d]epending on where [the police] were located," the officers' views may have been obstructed.  Nevertheless, the trial judge stated that "there could be any number of observation points within [the] circumference [around the 2100 block] from which you would have an unobstructed view."

We hold that the trial judge erred in finding that Davis failed to show she needed information regarding the location of

the officers' surveillance post.[1]  Counsel proved, through

independent evidence, the presence of obstructions in the area.

Moreover, the record contains essentially no evidence to

corroborate the testimony of the surveillance officer.  See id.

at 227–28, 450 S.E.2d at 399–400 (considering "the quality of any

corroborating evidence" as a factor in the inquiry).  The

evidence establishes that other people were in the vicinity, and

that the purchaser of the cocaine could not identify Davis as the

seller.  This case is distinguishable from Hollins, and we find

that Davis met her burden of showing a need for the information.

Accord Commonwealth v. Lugo, 548 N.E.2d 1263, 1268 (Mass. 1990).

III.

Davis also argues that the trial judge erred in ruling that

she could not offer as witnesses two property owners who, Davis

alleges, allowed the officers to use their land for the

observation post.[2]  We agree.

---

[1]Although counsel independently discovered the identity of
the individuals who permitted the officers to use their land,
nothing in the record indicates that those individuals knew
precisely where the officers stood when they made their
observations.  Thus, the availability of the land owners did not
obviate Davis' need for the information.

[2]Four days before trial, Davis filed a motion for a
continuance, in part on the ground that she had recently become
aware of two additional witnesses.  Counsel told the judge that
the witnesses were two property owners who would "say that the
police were on their property, making their observations."  The
trial judge referred to his prior ruling denying Davis' motion
for disclosure of the observation post and stated, "I'm not going
to allow you to bring those people in court to do indirectly what
I've ordered that you can't do directly."  Counsel notified the
judge that the individuals were not "fearful of testifying."  The
judge noted that "if they're going to come and testify anyway,"

"The Sixth Amendment of the United States Constitution guarantees the right to confront and cross-examine witnesses, a 'fundamental right essential to a fair trial.'" Hollins, 19 Va. App. at 226, 450 S.E.2d at 399 (quoting Pointer v. Texas, 380 U.S. 400, 403 (1965)). In addition, an accused has a "right 'to call for evidence in [the accused's] favor.'" Oliva v. Commonwealth, 19 Va. App. 523, 526, 452 S.E.2d 877, 880 (1995) (quoting Va. Const. Art. I, § 8).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, [the accused] has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

Washington v. Texas, 388 U.S. 14, 19 (1967); see also Massey v.

counsel would not need a continuance in order to subpoena the witnesses. The judge added that counsel could "have them subpoenaed today." However, the judge noted that he was not sure he was "going to let those witnesses on. I've already said that . . . information [revealing the officers' observation post] was not coming in." The judge further stated, "[W]e're not going to explore that anymore . . . . I mean, that's not something that you're going to be allowed to dance around in this trial." The trial judge ruled that the continuance was unnecessary and denied the continuance.

On the morning of trial, at a pretrial conference in the judge's chambers, the Commonwealth notified the judge that counsel for Davis had subpoenaed the neighbors. The judge told counsel that "we're not getting into the location of the surveillance point . . . . So I don't want those witnesses called for that purpose."

Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 757-58 (1985).

Because Officer Taylor was the only witness who described the transaction, Davis' ability to raise the question whether Officer Taylor's view was obstructed was crucial to her defense. Accord Lugo, 548 N.E.2d at 1268. Although Officer Taylor testified that he told the owner of the property used for the surveillance "that [the officers' use of the property] would be kept confidential to protect [the landowner] because [the landowner] was in fear of retaliation," counsel for Davis discovered those individuals independent of the officers and asserted that those individuals were willing to testify. Moreover, counsel for Davis also asserted that the surveillance post was no longer being used by the police. That assertion was not refuted.

Davis' right to present facts concerning the observation post was thwarted by the trial judge's ruling that because the Commonwealth was not required to disclose the location of the post during discovery, Davis could not offer her own independent evidence at trial in an attempt to prove the location of the post and the obstructions. Davis' counsel informed the trial judge that she had located the property owners who would testify that they were home when the police used their property as an observation point. Davis' counsel further represented that "there are clear obstructions . . . there are things in the way." Indeed, at a pretrial hearing, Davis' counsel offered as

exhibits sixteen photographs that depicted "a three hundred and sixty degree view of that area." The witness who made the photographs testified that obstructions were visible in some of the photographs.

In disallowing the testimony, the trial judge prevented Davis from challenging the officers' ability to observe the events about which they testified. The trial judge erred in excluding testimony of the witnesses that was relevant to that inquiry. Because the trial judge ruled that the Commonwealth was not required to disclose the observation post, the error in refusing to allow Davis to prove the site of the post through her own witnesses was not harmless.

IV.

Because these issues are likely to arise again on remand, we must also address Davis' argument that the trial judge erred in denying her motion for discovery of exculpatory evidence and her motion for discovery under Rule 3A:11.

A. EXCULPATORY EVIDENCE

Although "[n]o general constitutional right to discovery exists in a criminal case," Allen v. Commonwealth, 20 Va. App. 630, 637, 460 S.E.2d 248, 251 (1995), rev'd on other grounds, 252 Va. 105, 472 S.E.2d 277 (1996), the Commonwealth may not refuse to disclose material, exculpatory evidence. See Brady v. Maryland, 373 U.S. 83, 87 (1963). "[T]he suppression by the prosecution of evidence favorable to an accused upon request

9

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Id.

Counsel for Davis filed a Brady motion in which she sought discovery of the following:

> 1.  All information regarding the number of African-American females that were observed on the 2100 block on July 14, 1995, specifically, the name of each individual, address, a physical description of the individual and the opportunity to observe or copy any photograph, video, fingerprint or other form of identification.
>
> 2.  The names of the police officers who were conducting the surveillance of the 2100 block of Main Street on July 14, 1995.
>
> 3.  The names and address[es] of all individuals observed by police officers who were suspected of being involved with drug trafficking or drug use on the 2100 block of Main Street on July 14, 1995 and the name of the officer who made the observation.

Davis argues that several people were in the vicinity of the residence at the time of the surveillance and that the identity of those persons is exculpatory for several reasons.  She contends that several women were arrested for selling drugs, that she did not sell drugs, that the purchaser did not identify her as the seller of drugs, and that the police officer misidentified her as the seller.

The information sought in paragraphs 2 and 3 was not shown to be exculpatory.  As to the request in paragraph 1, we hold that the trial judge erred under the circumstances presented.

10

The person who purchased the drugs could not identify Davis as the seller. However, Officer Taylor who testified that he had encountered Davis several times, unequivocally identified Davis as the person who sold cocaine to Jones on July 14, 1995. Davis argues that Officer Taylor mistakenly identified her as the person who sold cocaine on July 14, 1995. The existence of evidence that other African-American females were seen in the vicinity of 2100 Main Street that same day might have a tendency to prove Davis' defense that she was not the person Officer Taylor observed selling drugs to Jones. Evidence is exculpatory under Brady and, therefore discoverable, if Davis could have used it for impeachment purposes. See United States v. Bagley, 473 U.S. 667, 676 (1985). These records were discoverable under Brady.

### B. RULE 3A:11 MOTION

In a Rule 3A:11 motion, Davis also sought "photographs (mug shots) of Ida L. Davis, Rhonda Davis Robinson, Demetrius Y. Lambert Bradley, and Cylethia Skinner." Under Rule 3A:11, an accused can obtain items in the possession of the Commonwealth "upon a showing that the items sought may be material to the preparation of [the accused's] defense and that the request is reasonable." Rule 3A:11(a)(2). Davis' counsel represented to the judge that these persons were in the vicinity of the 2100 block of Main Street "on or about" July 14, 1995 and had been arrested for selling drugs. Indeed, the evidence proved Robinson

11

resided at 2110 Main Street.  The identity of women who were later arrested for selling drugs from that locale was material not because Davis alleged that they were eyewitnesses, cf. Lowe v. Commonwealth, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977), but because it tended to support Davis' defense of misidentification.  See Bowman v. Commonwealth, 248 Va. 130, 133–36, 445 S.E.2d 110, 112–13 (1994).  The additional assertion that Davis shared some similar "features and physical characteristics" was sufficient proof that the information may have been material to the preparation of the case.  Accordingly, we hold that the trial judge erred, under the circumstances, in denying the discovery motion.

V.

Finally, Davis' argument that we should dismiss the prosecution because the trial judge erred in denying her motion to strike the evidence lacks merit.

For the reasons stated, we remand the case for proceedings consistent with this opinion.

Reversed and remanded.