HUMPHREYS, J.,
dissenting.
Because I do not believe that the petitioner has met his statutory burden to establish the jurisdiction of this Court to consider his petitions, and because, in my view, the analysis and holding of the majority improperly confers upon the Attorney General a de facto pardon power constitutionally reserved to the Governor of the Commonwealth, I must respectfully dissent.
For this Court to have jurisdiction to consider a petition for writ of actual innocence, the statutory scheme contemplates that the alleged new evidence must be based, at least in part, upon newly-discovered non-biological evidence. The Code of Virginia also provides for a “writ of actual innocence based on biological evidence.” Code § 19.2-327.2. However, such a writ is exclusively within the jurisdiction of our Supreme Court. Id. Thus, in order for this Court to have jurisdiction to consider these petitions, it must determine whether Haynes-worth’s petitions for writ of actual innocence are based on biological or non-biological evidence.
Different sections of the Code also provide additional insight as to the differences between writs based on biological evidence and those based on non-biological evidence. In a petition for a writ of actual innocence based on biological evidence, the petitioner must include “an exact description of the human biological evidence and the scientific testing supporting the allegation of innocence....” Code § 19.2-327.3. However, in a petition for a writ of actual innocence based on non-biological evidence, the petitioner must include “an exact description of the previously unknown or unavailable evidence supporting the allegation of innocence....” Code § 19.2-327.11. This broad requirement is clarified later in the section by the *216 statement that, “[h]uman biological evidence may not be used as the sole basis for seeking relief under this writ but may be used in conjunction with other evidence.” Id. (emphasis added).
Thus, if the only new evidence tendered to show innocence is biological in nature, the Supreme Court, not this Court, is the appropriate venue for seeking a writ of actual innocence. However, by including this last sentence in Code § 19.2-327.11, it is clear that the legislature intended that if there is any newly-discovered non-biological evidence demonstrating actual innocence, this Court is the appropriate venue to pursue a writ.
In Haynesworth’s case, he petitioned our Supreme Court for a writ of actual innocence for his conviction of the rape of JS based on a new test of the DNA recovered from JS’ attacker. The Supreme Court issued a writ of actual innocence for that case on September 18, 2009. Haynesworth now challenges his convictions of rape, sodomy by force, abduction with intent to defile, displaying a firearm while committing abduction, and displaying a firearm while committing a rape in the case involving MA, and his convictions of attempted robbery, abduction, and two counts of displaying of a firearm in committing a felony in the case involving TH. However, in both instances, there is no biological evidence related to their actual cases. Instead, Haynesworth relies primarily on the biological evidence from the cases involving JS and DK as the basis for seeking similar writs in these cases. Thus, if the only “new” evidence of innocence is the DNA evidence relied upon by Haynesworth to show that he did not commit the offenses in other similar cases, this Court should dismiss his petitions for lack of jurisdiction.
Haynesworth attempts to avoid this result by arguing that, having asserted that another man, Leon Davis (Davis), committed other similar crimes, the totality of the evidence in those other cases, ipso facto, becomes “newly discovered evidence” for the purpose of the cases currently before us. Thus, a close examination of the nature of the non-biological evi *217 dence Haynesworth is relying upon in the present cases becomes a critical predicate analysis to determine whether or not this Court even has jurisdiction to consider the merits of his petitions.
Haynesworth essentially contends that having demonstrated his innocence of a similar offense actually committed by another, a fortiori, all of the evidence presented in any other similar cases must be considered as “newly discovered” evidence of Haynesworth’s innocence in these cases. His asserted “new” evidence includes sexual assaults and attempted sexual assaults committed by Davis during the same period in which the assaults of MA and TH took place, the similarity in the locations of crimes known to have been committed by Davis, the physical resemblance between Haynesworth and Davis, prior misidentifications in other cases of Haynesworth as Davis, the disparity in height between Davis and Haynes-worth and its new significance given the identifications provided by the victims, and the modus operandi of Davis’ crimes.
However, in my view, such assertions, standing alone, are not enough to establish our jurisdiction to consider the merits of whether writs of actual innocence based on non-biological evidence should issue. It is also Haynesworth’s burden to establish that the new evidence is “material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt....” Code § 19.2-327.11(vii). The key term is “material.” Our Supreme Court has already held that new evidence is only material when it is true. Carpitcher v. Commonwealth, 273 Va. 335, 641 S.E.2d 486 (2007). “Additionally, ‘[e]vidence that relates to a matter that is properly at issue in the case is said to be material.’ ” Turner v. Commonwealth, 282 Va. 227, 250-51, 717 S.E.2d 111, 123 (2011) (quoting Charles E. Friend, The Law of Evidence in Virginia § 11-1 at 431 (6th ed.2003)).
The law is also clear that the parties cannot convey jurisdiction on a court by agreement or concession. Morrison v. Bestler, 239 Va. 166, 169-170, 387 S.E.2d 753, 755 (1990). *218 Further, “jurisdiction of the subject matter of the litigation must affirmatively appear on the face of the record, that is the record must show affirmatively that the case is one of a class of which the court rendering the judgment was given cognizance.” Shelton v. Sydnor, 126 Va. 625, 630, 102 S.E. 83, 85 (1920). “While a court always has jurisdiction to determine whether it has subject matter jurisdiction, a judgment on the merits made without subject matter jurisdiction is null and void.” Morrison, 239 Va. at 170, 387 S.E.2d at 755-56.
Thus, the peculiar posture of these cases is that, to determine in the first instance whether this Court has jurisdiction to consider Haynesworth’s petitions, we must examine the alleged new non-biological evidence, without consideration of any concession of jurisdiction by the parties, and conclude as a threshold matter whether such evidence could even be presented to a jury. Only if we answer that question in the affirmative may we consider the merits of the question of whether it would necessarily result in a different outcome. I believe every member of this Court shares the view that, but for consideration of the concession by the Attorney General, the facts and circumstances of the crimes committed by Davis do not have enough similarity to the record in the cases before us to be sufficient to warrant the issuance of writs. For the reasons that follow, I also believe that there are insufficient similarities to even establish that they would be admissible and thus material in a trial.
Therefore, any review of the newly-discovered evidence in these cases for either purpose must begin with an analysis of whether or not the evidence that Davis committed other crimes would be admissible in the first instance.
In these cases, the petitioner points to facts and circumstances in other cases that he asserts prove that another committed these offenses. In determining whether such evidence would be admissible, we have said that
“In Virginia, evidence that a crime was actually committed by someone other than the accused is admissible for the purpose of generating a reasonable doubt of the guilt of the *219 accused.” Evidence tending to show that someone other than the defendant committed the crime generally raises a factual question for the jury. A defendant is entitled to present his version of the facts along with that of the prosecution so the jury may decide where the truth lies.
Oliva v. Commonwealth, 19 Va.App. 523, 526-527, 452 S.E.2d 877, 880 (1995) (quoting Weller v. Commonwealth, 16 Va.App. 886, 890, 434 S.E.2d 330, 333 (1993)) (internal citations omitted). However, it is not enough for Haynesworth or any petitioner to simply assert evidence that might raise a post-trial reasonable doubt. The plain language of Code § 19.2-327.11(A)(vii) places a much heavier burden on a petitioner. He must establish his actual innocence. Moreover, even in a trial setting, a defendant’s right to present evidence suggesting that another committed the crime is not unfettered.
The right to present evidence in one’s defense does not, however, permit a defendant to introduce evidence that merely suggests or insinuates that because a third party resembles the accused, the third party may have some connection to the crime. Such evidence is irrelevant; it tends to confuse and mislead a jury unless “evidence [has been] introduced ... [that] points directly to guilt of a third party.” Thus, only “where there is a trend of facts and circumstances tending clearly to point out some other person as the guilty party, the [defendant] may introduce any legal evidence which is available tending to prove that another person committed the crime with which he is charged.”
Id. (quoting Weller, 16 Va.App. at 890, 434 S.E.2d at 333; and Karnes v. Commonwealth, 125 Va. 758, 766, 99 S.E. 562, 565 (1919)) (emphases added). This analysis is highly fact specific. See Oliva v. Commonwealth, 19 Va.App. 523, 452 S.E.2d 877 (1995) (holding that the trial court erred in excluding the testimony of a witness who saw a person other than the defendant with a similar physical appearance and wearing nearly identical clothes as the defendant running from the scene of the crime); Karnes, 125 Va. 758, 99 S.E. 562 (holding that statements, including death threats, made by one other *220 than the defendant to the victim should have been admitted at trial); and Elliott v. Commonwealth, 267 Va. 396, 593 S.E.2d 270 (2004) (holding that evidence of a prior incident in which someone other than the defendant brandished a gun at the victim was inadmissible, because it merely suggested that a third party could have committed the crime).
If the evidence dearly points to the guilt of someone other than the defendant, then evidence that is relevant and material must be admitted if it is otherwise admissible. It falls on this Court to make the decision of whether the evidence advanced by Haynesworth points clearly to another as the perpetrator of the offenses before us or merely does no more than suggest it.
In this case, there are certainly some similarities between the crimes committed by Davis and the two cases before us. For example, MA’s attacker made her walk with her arm around him as if she were his girlfriend, just as Davis did with DP. In the attack on MA, the assailant began by demanding oral sex before moving on to intercourse. In TH’s case, her attacker told her to get out of their car so they could go around the corner and she could give him “head.” Davis’ assaults often began with oral sex. Although the assailant used a gun during the attacks on MA and TH, MA’s attacker said that he normally used a kitchen knife, and Davis used a knife during the commission of his crimes. However, these similarities lack any distinctive element and, the Attorney General’s concession aside, they fall far short of establishing that the same person committed all of these offenses.
Moreover, there are also many differences between the various attacks that reinforce this conclusion. For example, all of the crimes known to have been committed by Davis involved the use of a knife while the assailant in the two cases before us used a gun. In the attack on TH, the attacker had a brown and black gun. It was constantly in her face or pointed at her. Her assailant began his encounter asking for oral sex, and no robbery occurred or was attempted. However, since the attack was cut short, there are few unique details about *221 this attack, and the lack of such details certainly does not work to the advantage of a petitioner in these circumstances. In the attack on MA, her assailant had a silver gun. He asked if she had any money. Although she did not have any, she offered a class ring that her assailant did not take, yet the perpetrator of the other crimes relied upon by Haynesworth took both money and jewelry from his victims. Also contrary to the other crimes relied upon by Haynesworth, MA’s assailant made her perform oral sex on him multiple times, but did not ejaculate in her mouth. He gave her his gloves and asked if she would be his girlfriend. He also called her the next morning. Further, Davis never attempted anal intercourse with any of his known victims, but MA’s attacker did. Overall, MA was with her attacker and able to study and observe him for over two hours. MA and TH both clearly identified Haynesworth as their attacker in both a photo array and in court under oath, and neither victim has recanted those identifications. Further, MA was observant enough to note that her attacker was wearing blue jeans and an orange-brown (akin to tan) jacket with an alligator on it. Also, contrary to the facts in the cases before us, in Davis’ attacks, he was never with the victim for any appreciable length of time. He never used a gun in his attacks, although in the case of DF, he mentioned a gun. Despite the multiple attempts at oral sex, the perpetrator never ejaculated in MA’s mouth as Davis did in the case of DF. Davis is also known to actually rob his victims. In the case of DP and DK, he took a gold necklace and $60 respectively. However, as already noted, when MA told her attacker that she had a class ring, he said he did not want it.
Finally, and also unlike the facts in these cases, in the cases known to have been committed by Davis, when Davis is uninterrupted and leaves his victim by choice, he always insists they “stay put” or count to 100 before they leave. He also threatened them if they went to the police. This is in contrast to what MA’s attacker did, when he walked with her towards a diner after the attack concluded and called her the next morning.
*222 Thus, unless the rules of evidence are ignored, the “new evidence” tendered by the petitioner and the Attorney General, at best does no more than suggest that Davis may have committed these offenses and, thus, the evidence tendered by Haynesworth would not be admissible to show that Davis was the person who actually committed the attacks on MA and TH.
Consequently, in my view, Haynesworth has not sufficiently established that this Court has the statutory jurisdiction to consider the merits of his petitions, including the effect of any concession by the Attorney General.
Moreover, even if I set aside my concerns about the jurisdictional posture of these cases, the statutory task of this Court is to review all of the evidence, new and old, and determine if “no rational trier of fact could have found proof of guilt beyond a reasonable doubt.” Code § 19.2-327.11(A)(vii). In my view, this statutory language also clearly limits our decision to grant or dismiss a writ of actual innocence only to evidence that would be admissible in a trial. Obviously if the “new” evidence were not admissible, no trier of fact would ever hear it, much less be swayed by it. Thus, in the case of both determining if we have jurisdiction to consider a petition in the first instance and also in connection with our ultimate task of determining whether a petition is meritorious, any “newly discovered” evidence considered for either purpose, must be evidence that would be admissible in court.
In addition and as noted by Judges Elder and Beales, even if the evidence in these other cases were admitted, a jury or judicial factfinder could nevertheless credit the testimony of the victims who identified Haynesworth as their assailant. Indeed, the Attorney General observed at oral argument that, but for his concession reflecting his belief and that of the Commonwealth’s Attorneys of the jurisdictions which prosecuted Haynesworth, that he did not commit these offenses, a factfinder could very well credit the identification testimony of the victims in these cases over the evidence relied upon by Haynesworth. When questioned about his view of the limits, *223 if any, that might constrain a concession of the nature we have in this case, the Attorney General answered, correctly in my view, that any concession by him must be supported by other evidence in the record. Given the foregoing, assuming the jurisdictional impediment was overcome, the question upon which the outcome of these cases turns then becomes, "What is the legal effect of the Attorney General’s concession?”
The majority answers that question by implicitly concluding that this Court is bound to grant these petitions and issue the writs because of it. My concern and disagreement with this approach is grounded in the plain language of the statute and the precedent this approach sets.
Because a trial is the historically preferred mechanism for testing the quality of evidence and determining guilt or innocence, the statute governing our actions in these cases sets the bar deliberately high for any petitioner seeking a writ of actual innocence. New evidence that merely raises doubt about the verdict or even second thoughts on the part of a prosecutor, are not legally sufficient to issue a writ and for such cases, executive clemency remains an available alternative. The statute explicitly states that for a writ to issue, this Court must base its judgment to that effect “only upon a finding that the petitioner has proven by clear and convincing evidence all of the allegations contained in clauses (iv) through (viii) of subsection A of § 19.2-327.11, and upon a finding that no rational trier of fact could have found proof of guilt beyond a reasonable doubt, grant the writ....” Virginia Code § 19.2-327.13 (emphases added).
The opinion of any attorneys in a case, including opinions in the nature of a concession from those that represent the Commonwealth, are expressly not recognized by the law as evidence, and judges remind juries of that fact on a daily basis. See, e.g., Waye v. Commonwealth, 219 Va. 683, 691, 251 S.E.2d 202, 206 (1979) (approving an instruction to “the jury that the [attorney’s] statement was not evidence.”) In my judgment, the plain language of the statute mandates a similar *224 role for this Court when exercising our original jurisdiction in these cases.
Moreover, having set the policy and precedent in this case, any future similar concession by the Attorney General will necessarily require an equally similar result and, thus, we today effectively grant the Attorney General the same power to pardon previously only reserved for the Governor of the Commonwealth in Article V, Section 12 of the Constitution of Virginia.
To make my position perfectly clear, I expressly note that the obligation of any and all attorneys who represent the Commonwealth in a criminal case is to seek justice rather than convictions,[11] and I very much applaud the efforts of the Attorney General and the Commonwealth’s Attorneys involved in this case, to rectify what they consider are two wrongful convictions. My point is simply that, on the record before us, this statutory mechanism is not the appropriate vehicle for doing so. The affidavits of the Commonwealth’s Attorneys of Henrico County and the City of Richmond reflect that they regret the original decision they made to charge Haynesworth in these cases, but their hindsight and that of the Attorney General based upon their professional re-evaluation of these cases are not the same thing as actual evidence of innocence. But for the concession of the Attorney General, and as he has also further conceded at oral argument, the “new evidence” in these cases unquestionably falls far short of pointing inexorably at another as the perpetrator. Thus, in the absence of newly-discovered evidence that would be admissible in court that clearly establishes both the jurisdiction of this Court to act and actual innocence of the crimes for which he was convicted, the plain language of the statute prevents writs of *225 actual innocence from issuing based fundamentally upon the request of the Attorney General.
I respectfully suggest that, instead of conferring the de facto power to pardon on the Attorney General this Court should dismiss the petitions for the reasons stated. The Attorney General and the Commonwealth’s Attorneys who prosecuted these cases might consider then joining the petitioner in seeking a pardon from the Governor who, unlike this Court, is not constrained in his decision by either the plain language of Code § 19.2-327.13 or the rules of evidence.
For these reasons, I would dismiss the petitions for writ of actual innocence.
This order shall be published.

. “The [prosecutor] is the representative not of an ordinaiy party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done....” Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).