COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Raphael and Senior Judge Petty
Argued at Richmond, Virginia

DAVID ALEXANDER HARRIS

MEMORANDUM OPINION* BY
v.        Record No. 1653-22-2          JUDGE STUART A. RAPHAEL
APRIL 9, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

Stephen A. Mutnick (Winslow, McCurry & MacCormac, PLLC, on
brief), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General; Lucille M. Wall, Assistant Attorney General, on
brief), for appellee.

David Alexander Harris was convicted of multiple counts of possession of controlled

substances; two counts of possession with intent to distribute a Schedule I or II controlled

substance, third offense, possession of more than one ounce of marijuana, possession of a

Schedule III controlled substance, and two firearms charges. Harris asserts that the trial court

erred in admitting incoming text messages recovered from his two cellphones and in declining to

admit his co-defendant's guilty plea. He also claims that the evidence failed to support his

convictions. We find that these claims lack merit. Clear Virginia precedent permits the

admission of statements made to a defendant to provide context for his responses. The

co-defendant's guilty plea did not fall into one of the few exceptions to the general rule that a

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

co-defendant's guilty plea is inadmissible.  And the evidence sufficed to sustain Harris's convictions.  So we affirm the judgment.

On May 28, 2021, Detective Ritchie of the Henrico County Police Department was surveilling a local hotel as part of a drug interdiction task force.  Observing the hotel from an adjacent gas station, Ritchie watched an individual enter and exit several rooms and then walk to the gas station, where he briefly entered the back seat of a car before moving to the front seat.  The vehicle left the gas station, and Ritchie radioed another officer to stop it.

Officer Chapman of the Henrico County Police Department stopped the vehicle for failing to display a front license plate.  Harris was the driver, and Erica Hughes sat in the passenger seat.  While writing a citation for Harris, Chapman saw both Harris and Hughes on their cellphones and noted that Harris had two phones, one red and the other dark orange.  Ritchie and another officer joined Chapman at the traffic stop, and Ritchie observed that Hughes was "suspiciously manipulating her groin area and her crotch . . . like she was making a motion of placing something into it."

A Richmond Police Department K-9 unit arrived and conducted a check of the vehicle while Harris and Hughes were still inside.  The dog alerted on the "open door on the passenger side to the center console of the vehicle," as well as on "the driver's side rear passenger door and underneath the vehicle."  The police directed Harris to exit the car and placed him in handcuffs.  When asked whether he had "anything illegal" in the vehicle, Harris replied "just weed."  In the car's center console, Chapman found a brown bag containing 41 suboxone strips,[2] 30 grams of

---

[1] We review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[2] Suboxone is a Schedule III controlled substance.  Code § 54.1-3450.

cocaine, and 42 grams (or 1.5 ounces) of marijuana. Under the bag, police found a "firearm and then a folded lottery ticket with a small amount of marijuana" and another bag of marijuana labeled "sour diesel." The officers recovered a black digital scale and a stack of blank "lotto tickets" from the driver's side door, as well as three cellphones from the center console, two of which belonged to Harris.

During a consent search of Harris's person, officers found $3,160 in cash, "folded over and wrapped in a rubber band," stowed in a "little satchel." After being removed from the vehicle, Hughes took out and turned over to police three "baggies" of powder that she had been hiding in "[h]er crotch area, inside her pants." One baggy had 25 grams of cocaine, another had 17 grams of cocaine, and the third had 20 grams of heroin and fentanyl.[3]

A forensic examination of the suboxone strips found one latent fingerprint belonging to Harris and three belonging to Hughes. The Department of Forensic Science analyzed Harris's cellphones, finding various text messages and a photograph of a handgun. In one text, a number associated with "Aaron" texted Harris, "Ya I'll do 40 worth 25 and 15 powder." Harris responded, "Ok 20min." In another exchange, Harris asked a person identified as "Tiffany," "Did u like the smoke"? Tiffany replied "yesss that shit was gasss" and later texted Harris, "i need some weeed," to which Harris responded, "How much money u got"?

Hughes pleaded guilty to possession of a Schedule I or II controlled substance and possession of a firearm while in possession of a controlled substance.

Harris pleaded not guilty to the charges. In the jury trial that followed, Harris was convicted of

---

[3] Heroin is a Schedule I controlled substance. Code § 54.1-3446. Cocaine and fentanyl are Schedule II controlled substances. Code § 54.1-3448.

- 3 -

- two counts of possessing with the intent to distribute a Schedule I or II controlled substance, third offense, in violation of Code § 18.2-248(C) (one each for possession of cocaine and heroin);

- one count of possession of a Schedule III controlled substance, suboxone, in violation of Code § 18.2-250;

- one count of possession of more than one ounce but less than five pounds of marijuana, in violation of Code § 18.2-250.1;

- one count of possession of a Schedule I or II controlled substance while possessing a firearm on or about his person, in violation of Code § 18.2-308.4(B); and

- one count of possession of a firearm after being convicted of a non-violent felony within the past ten years, in violation of Code § 18.2-308.2.

The trial court sentenced Harris to 90 years and 6 months of incarceration with 66 years and 6 months suspended, for an active sentence of 24 years. Harris noted a timely appeal.

ANALYSIS

Harris asserts that the trial court erred by admitting the incoming text messages and by refusing to admit Hughes's guilty plea for the charges arising from the same incident. He also claims that the prosecution failed to prove his possession of the cocaine, heroin, and firearm. We consider these claims in turn.

*A. Text Messages (Assignment of Error I)*

Harris concedes that his responses to the incoming text messages were admissible as party admissions. *See* Va. R. Evid. 2:803(0)(A). But he argues that the trial court should have excluded the incoming text messages themselves as hearsay. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Barnes v. Commonwealth*, 33 Va. App. 619, 626 (2000) (quoting *Crews v. Commonwealth*, 18 Va. App. 115, 118 (1994)). But "[t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal

- 4 -

conclusions." *Helmick Fam. Farm, LLC v. Comm'r of Highways*, 297 Va. 777, 794 (2019) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay is generally inadmissible unless it falls within an exception." *Chenevert v. Commonwealth*, 72 Va. App. 47, 54 (2020). But "[i]f a statement is offered for any purpose other than to prove the truth or falsity of the contents of the statement, . . . it is not objectionable as hearsay." *Hamm v. Commonwealth*, 16 Va. App. 150, 156 (1993).

The text messages at issue were displayed in 188 PowerPoint slides in Commonwealth's Exhibit 12. Before trial, Harris objected to the admission of all incoming text messages, arguing that they were all hearsay. The Commonwealth countered that the messages were not hearsay because they were not offered to prove the truth of the matter asserted but to show Harris's "intent." Harris responded that the messages were all being offered for their truth. The trial court overruled his objection and admitted the incoming text messages.

We have squarely held that out-of-court statements are not hearsay when offered to provide context for the defendant's admissions in response. *Jones v. Commonwealth*, 71 Va. App. 597, 608 (2020). In *Jones*, the trial court admitted the recording of a conversation between the victim, the victim's mother, and the defendant. *Id.* at 602. During the recording, the victim told the defendant that "[y]ou was like kissing on me and stuff . . . and like pulled down my shirt and stuff and like messed with my privates." *Id.* at 603. In response, the defendant explained his version of events but "acknowledged that his conduct went 'too far,' and he apologized repeatedly." *Id.* at 604. We held that the victim's statements on the recording were not hearsay because they were offered not for their truth but as "[a] statement offered to provide

- 5 -

context to an admission." *Id.* at 605 (quoting *Swain v. Commonwealth*, 28 Va. App. 555, 560 (1998)).

Similarly, we held in *Bennett v. Commonwealth*, 69 Va. App. 475 (2018), that the audio recording of the defendant's telephone call with a confidential informant was admissible to show how the defendant reacted when the informant said he wanted to buy "funny sticks," and "a whole 3.5," or an "eight ball" of cocaine. *Id.* at 490. "[T]he informant's statements were not offered for the literal truth of whether he wanted the specified drugs," so they were not hearsay. *Id.* at 490-91. And in *Swain*, we held that a witness's response to the defendant's asking "what do you want" was not admitted for the literal truth that she wanted "a twenty" of cocaine, but to provide context that the defendant's inquiry was an offer to sell drugs. 28 Va. App. at 559. "[W]ords offered solely to give context to party admissions are not hearsay and are admissible." *Id.* at 560.

Likewise, the incoming text messages to Harris's phone were admissible to provide context for his admissions. Without the incoming messages, Harris's outgoing messages would lack context and be incomprehensible. As the Commonwealth aptly notes, "[i]t is immaterial whether 'Aaron' wanted to purchase drugs when he messaged Harris on May 26, 2021, nor is Harris charged with providing 'Aaron' drugs on that date." Instead, "Aaron's" message shows Harris's reply, "Ok how you want it," for what it is—an offer to sell drugs. Thus, the trial court did not err in admitting the text messages.[4]

Harris argues that he did not respond to several of the incoming text messages, so they could not have provided context for any response. He also argues that each conversation should

---

[4] Because *Jones*, *Bennett*, and *Swain* control the question presented here, we decline Harris's invitation to follow authorities in other jurisdictions that concluded that incoming text messages were hearsay because they were offered for the truth of the matter asserted.

- 6 -

be analyzed "individually" to determine whether it involved hearsay. Both points resonate with us.

But Harris defaulted those arguments by failing to raise them below when opposing the admission of the text messages. The contemporaneous-objection requirement demands that the party asserting error state the objection "with reasonable certainty at the time of the ruling." Rule 5A:18. "Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

> When making an objection, "the parties must inform the [trial] court of the precise points of objection in the minds of counsel," and make the objection "at a point in the proceeding when the trial court is in a position . . . to consider the asserted error [and] rectify the effect of the asserted error."

*Moison v. Commonwealth*, ___ Va. ___, ___ (Oct. 19, 2023) (alterations in original) (quoting *Maxwell v. Commonwealth*, 287 Va. 258, 265 (2014)). By failing to raise those particular points below, Harris has forfeited them.

### B. Hughes's Guilty Plea (Assignment of Error II)

Harris next assigns error to the trial court's refusal to admit evidence of Hughes's guilty plea. While acknowledging that possession of controlled substances can be joint, Harris argues that Hughes's guilty plea was relevant to show that Hughes had exclusive possession of the drugs found on her person.

"[T]he admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion." *Chenevert*, 72 Va. App. at 53 (alteration in original) (quoting *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 44 (2019)). When reviewing for an abuse of discretion, we do not substitute our judgment

for the trial court's but consider "only whether the record fairly supports the trial court's action." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009).

Generally, "evidence . . . that an accomplice has pleaded guilty is inadmissible." *Lewis v. Commonwealth*, 211 Va. 80, 82 (1970). Harris argues that a co-defendant's guilty plea is admissible when the defendant himself seeks to introduce it. He relies on *Parker v. Commonwealth*, No. 1548-94-1, 1995 Va. App. LEXIS 833 (Nov. 14, 1995),[5] but *Parker* does not stand for the broad rule that Harris advocates.

The panel in *Parker* held simply that questions about two other defendants' guilty pleas were relevant to the credibility of the witness—the defendant's accomplice in the robbery at issue. *Id.*, slip op. at 3-5, 1995 Va. App. LEXIS 833, at *4-5. The defendant had cross-examined the accomplice about his plea agreement "to show that [the accomplice] had a reason to lie, thereby challenging his credibility." *Id.* at 4, 1995 Va. App. LEXIS 833, at *5. That line of questioning suggested that the accomplice "was testifying on behalf of the Commonwealth as a part of a deal . . . [to] avoid a possible death sentence." *Id.* We said that the trial court properly allowed the Commonwealth to rehabilitate the accomplice by questioning him about a guilty plea by the gunman in the same robbery. *Id.* at 3-5, 1995 Va. App. LEXIS 833, at *4-5. Those questions were intended to show that "the gunman[] already had been convicted of the charge of capital murder and, therefore, the plea agreement obtained by [the accomplice] was not an inducement for [him] to testify against [the defendant]." *Id*. at 4, 1995 Va. App. LEXIS 833, at *5. The limited exception at issue in *Parker* has no bearing here because Hughes's guilty plea was not offered to impeach or rehabilitate any witness.

---

[5] Unpublished opinions may be cited "as informative, but will not be received as binding authority." Rule 5A:1(f).

- 8 -

To be sure, limited exceptions exist to the rule barring the admission of a co-defendant's confession. *See United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981) ("Admissibility of the plea turns on the purpose for which it is offered. When that purpose is to further the jury's difficult task of evaluating credibility, it is relevant and admissible without reference to the identity of the offering party."). For instance, "evidence that a crime was actually committed by someone other than the accused is admissible for the purpose of generating a reasonable doubt of the guilt of the accused." *Oliva v. Commonwealth*, 19 Va. App. 523, 526 (1995) (quoting *Weller v. Commonwealth*, 16 Va. App. 886, 890 (1993)).

But Hughes's pleading guilty to possession did not exonerate Harris because "[w]e have [long] held that possession of a drug need not be exclusive, but may instead be joint." *Archer v. Commonwealth*, 225 Va. 416, 418 (1983). Here, Harris texted Hughes during the traffic stop to "[f]igure out how to put it into [her] psnts [sic]." Hughes was then found with baggies of drugs in her pants. Those facts supported a finding that Harris and Hughes jointly possessed the drugs. The fact that Harris pleaded guilty did not make it "more probable," Va. R. Evid. 2:401, that her possession was exclusive, rather than joint. So the trial court did not abuse its discretion by concluding that Hughes's guilty plea was not relevant, *id.*, and therefore "not admissible," Va. R. Evid. 2:402(a).

*C. Sufficiency of the Evidence (Assignments of Error III, IV, and V)*

Finally, Harris challenges the sufficiency of the evidence to support his convictions. In conducting a sufficiency review, we presume that the trial court's judgment is correct and will not set it aside unless that judgment is "plainly wrong or without evidence to support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).

### 1. *Possession of cocaine and heroin*

Harris was convicted of two violations of Code § 18.2-248(C), which prohibits the possession of a controlled substance with the intent to manufacture, sell, give, or distribute it. Harris conceded at trial that the Commonwealth had offered enough circumstantial evidence to show his intent to distribute. On appeal he argues only that the trial court erred when it found "evidence sufficient to show *possession*" of cocaine and heroin. (Emphasis added.) So we examine only whether the evidence sufficed to prove Harris's possession of those drugs.

We held in *Lewis v. Commonwealth*, 76 Va. App. 92 (2022), that a "'conviction for the unlawful possession of [contraband] can be supported exclusively by evidence of constructive possession,' whether sole or joint." *Id.* at 102 (alteration in original) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)). "Constructive possession may be established by 'evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [contraband] and that the [contraband] was subject to his dominion and control.'" *Id.* (alterations in original) (quoting *Smallwood*, 278 Va. at 630).

The record contains ample evidence from which the jury could find that Harris constructively possessed the controlled substances found in his vehicle and on Hughes's person. The substances were present in the vehicle that belonged to Harris and that he was driving at the time of the stop. Police found 30 grams of cocaine in the vehicle's center console. The cocaine was mixed in with property belonging to Harris, including the marijuana that he told police was in the vehicle. And Harris's fingerprint was on one of the suboxone strips that was also found in the center console.

As for the heroin and cocaine that Hughes was hiding in her pants, we disagree with Harris's claim that those drugs "were in the *exclusive*, actual possession of Hughes." (Emphasis added.) As already noted, "criminal drug possession" can be "either sole or joint." *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021) (citing *Smallwood*, 278 Va. at 629-30). The evidence supported the jury's finding that Harris constructively possessed the drugs surrendered by Hughes. During the traffic stop, Harris texted Hughes to stash the drugs in her pants and she obliged. Police then observed Hughes moving as if putting something in her pants. She was then found to have concealed the drugs there. As a result, the jury could properly conclude that Harris knew of the drugs in Hughes's possession, understood their nature, and exercised dominion and control over them despite their being in Hughes's physical custody.

### 2. Possession of the firearm

Harris was also convicted of (i) possessing a firearm while possessing a controlled substance, in violation of Code § 18.2-308.4(B), and (ii) possessing a firearm after having previously been convicted of a felony, in violation of Code § 18.2-308.2. Code § 18.2-308.4(B) "requires the simultaneous actual or constructive possession of a controlled substance and actual or constructive possession of a firearm on or about the person." *Hunter v. Commonwealth*, 56 Va. App. 50, 64 (2010). To sustain a conviction under § 18.2-308.4(B), the Commonwealth must prove beyond a reasonable doubt that the defendant possessed controlled substances and either "actually possessed the firearm 'on . . . his person'; *or* that the defendant was aware of both the presence and character of the firearm, that the firearm was within the accused's dominion and control, and that the firearm was readily accessible for prompt and immediate use." *Id.* at 64-65 (quoting Code § 18.2-308.4(B)). Code § 18.2-308.2 "only requires the Commonwealth to prove, as elements of the crime, that the accused is a convicted felon and that he or she possessed an object which was made with the purpose to expel a projectile by

gunpowder or other explosion." *Armstrong v. Commonwealth*, 36 Va. App. 312, 322 (2001) (en banc), *aff'd* 263 Va. 573 (2002).

The record amply established that Harris knowingly possessed a firearm after being convicted of a felony. Harris stipulated to his prior felony drug distribution convictions, and the trial court admitted into evidence a certificate of analysis showing that the handgun recovered from the vehicle was a functional firearm. The firearm was found in the center console next to Harris. Also present in the center console alongside the handgun were Harris's two cellphones and the marijuana that he admitted was his. The same firearm was also seen in photographs recovered from Harris's phone. And Harris had sent the photographs to another person, admitting that the gun was a "Beretta nine." Thus, a reasonable factfinder could conclude that Harris was aware of the character and the presence of the firearm in his vehicle, exercised dominion and control over it, and had ready access to it.

CONCLUSION

In sum, the trial court did not abuse its discretion when rendering its evidentiary rulings, and the evidence supported Harris's multiple convictions.

*Affirmed.*